UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:  MICHAEL J. RANKIN
        LINDA J. RANKIN,

                              Debtors,

MICHAEL J. RANKIN and
LINDA J. RANKIN,

                              Plaintiffs,

-vs-

GRANDVIEW PLAZA I, L.L.C., and
BRUCK LAW OFFICES, S.C.,

                              Defendants.

Adversary No. _____

Case No. 09-37264-svk

Chapter 7

**COMPLAINT FOR DECLARATORY JUDGMENT THAT DEBT IS
SUBJECT TO DEBTORS' DISCHARGE, AND FOR SANCTIONS FOR
VIOLATION OF THE DISCHARGE INJUNCTION**

**<u>JURISDICTION AND VENUE</u>**

1.  This adversary proceeding is brought pursuant to FRBP 7001 and 11 U.S.C.

    sections 105(a), 523(a)(3) and 524(a).

2.  This court has subject matter jurisdiction over this adversary proceeding to 28

    U.S.C. sections 157 and 1334.

3.  Venue is proper in this district pursuant to 28 U.S.C. section 1409.

4.  This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).

**<u>PARTIES</u>**

1

5. The debtor-plaintiffs, Michael Rankin and Linda Rankin, are adult residents of the City of Oconomowoc, Waukesha County, State of Wisconsin.

6. The defendant, Grandview Plaza I, L.L.C. ("Grandview"), is a limited liability company licensed to do and doing business in the State of Wisconsin, with a registered agent of Timothy J. Voeller, 1830 Meadow Lane, Suite A, Pewaukee, WI 53072.

7. The defendant, Bruck Law Offices, S.C., is a law firm doing business in the State of Wisconsin, with a registered agent of Deborah Krusche Bruck, 322 East Michigan Street, 6th Floor, Milwaukee, WI 53202.

## APPLICABLE LAW

8. The substantive rights of the parties in this proceeding are governed by Title 11 of the U.S. Code (hereinafter the "Bankruptcy Code"), the laws of the State of Wisconsin, to the extent that law is not displaced by the Bankruptcy Code, and other Federal law.

## FACTS

9. On or about April 27, 2004, the plaintiffs, Michael and Linda Rankin, and the defendant, Grandview, entered into a "Lease" for the rental of the commercial premises located at 1830 East Meadow Lane, Waukesha, Wisconsin. The Lease was a five (5) year lease, expiring on September 30, 2009. A copy of the Lease is attached hereto and marked as Exhibit A.

10. The plaintiffs, Michael and Linda Rankin, both signed a "Guaranty of Lease"

2

that stated in part, "For clarification, this Guaranty shall apply only to the original term of said Lease and shall *not apply to any extension term or renewals of the Lease.*" (emphasis supplied) A copy of the Guaranty of Lease is attached hereto and marked as Exhibit B.

11. The plaintiffs were unable to generate enough business at the leased location at 1830 East Meadow Lane, Waukesha, Wisconsin, and on February 2, 2006 assigned their interest as lessees of the premises to Two Sandwich Kings, L.L.C. ("Two Sandwich Kings"). The Plaintiffs vacated the premises on or about February, 2006. A copy of the Assignment of lease is attached hereto and marked as Exhibit C.

12. The defendant Grandview was aware of the assignment of the lessee interest made by the plaintiffs, Michael and Linda Rankin.

13. On December 3, 2009, Michael and Linda Rankin filed a Petition for Relief under Chapter 7 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Wisconsin, Case No. 09-37264-svk. The case was determined to be a "no asset" case. A Discharge was entered in their bankruptcy on April 5, 2010. Any obligations to Grandview were not listed by the debtors in their bankruptcy schedules.

14. The debtors did not list the Lease or obligation to Grandview in their bankruptcy schedules because the terms of the Lease would have expired prior to the bankruptcy filing, and the debtors did not believe they had any remaining liability or interest in the Lease following the assignment of their

3

interest in the same, and the expiration of its terms.

15. The lease assignee defaulted on its obligations under the lease agreement with Grandview, and on February 11, 2009, Grandview commenced a lawsuit for eviction in the Circuit Court for Waukesha County, Case No. 09-SC-000880, against the Two Sandwich Kings, MLR Enterprises, Inc., Michael Rankin and Linda Rankin.  The lawsuit was dismissed by the Court on March 17, 2009, due to the apparent Chapter 11 bankruptcy filing of the Two Sandwich Kings, as referenced in the Court docket on CCAP.  The CCAP records for this case are attached hereto and marked as Exhibit D.

16. On June 1, 2009, Grandview commenced a second eviction action against the same defendants in the Circuit Court for Waukesha County, Case No. 09-SC-03065, and a Writ of Restitution was granted by the Court on June 29, 2009, against all defendants.  On August 17, 2009, the Court dismissed all remaining causes of action in this second lawsuit, as referenced in the Court docket on CCAP. The CCAP records for this case are attached hereto and marked as Exhibit E.

17. On or about July 10, 2009, Grandview negotiated an "Amendment to Lease" with the lease assignee, Two Sandwich Kings.  The amendment acknowledges that as of July 6, 2009, Two Sandwich Kings owes Grandview the amount of $17,351.21 in past due rent. The term of the original Lease was extended five (5) years. The Amendment to Lease is attached hereto and marked as Exhibit F.

18. William J. Foley signed a "Guaranty" of the Amendment to Lease that was

4

attached to the amendment "and made part of a Lease Agreement dated April 27, 2004." Foley guaranteed, among other things, payment of the rent. The Guaranty is attached hereto and marked at page 3 of Exhibit F.

19. On March 25, 2011, Grandview commenced an eviction action against the same defendants as it had previously, as well as naming William J. Foley a defendant. This was Waukesha Circuit Court Case No. 11-SC-001656. The CCAP records for this case are attached hereto and marked as Exhibit G.

20. On April 22, 2011, an eviction hearing took place before the Honorable Ralph M. Ramirez, and the result was: writ of eviction to be signed May 31, 2011, and a damage hearing scheduled for June 10, 2011.

21. On June 10, 2011, the Court granted judgments against the defendants, William and Linda Rankin in the amount of $31,618.38, and against Two Sandwich Kings and William Foley in the amount of $39,705.73.

22. Subsequent to the entry of judgment, the Grandview commenced collection activities on the judgments that were entered in Case No. 11-SC-01656.

23. On September 23, 2011, Attorney Jeffrey A. Reitz of Michael G. Mack Law Offices, wrote to Attorney Dino Antonopoulos of The Schroeder Group, S.C., which was representing Grandview; and a copy of the letter is attached hereto and marked as Exhibit H. It notified counsel of the bankruptcy filing, and indicated why the bankruptcy Discharge applied to this debt. The letter enclosed a copy of the Memorandum Decision of Honorable Susan V. Kelley, U.S. Bankruptcy Judge, In re: Brent E. Guseck, Bankruptcy Case No. 01-

5

30272-svk. The letter requested that the judgment entered in Case No. 11-SC-01656 be vacated and dismissed.

24. Following this letter, no further action was taken against Michael and Linda Rankin by Grandview.

25. More than three years after the letter, on or about November 6, 2014, new counsel for Grandview, Bruck Law Offices, S.C., prepared an Affidavit supporting the issuance of an Order to Appear Before A Court Commissioner in Case No. 11-SC-1656, to facilitate collection on the judgment entered in that case, which Order was signed by Court Commissioner Joseph L. Cook on November 10, 2014, which Order required Michael Rankin to appear before the Court Commissioner on November 25, 2014, and to bring with him various personal financial documents.

26. On November 25, 2014, Michael Rankin appeared at the "supplemental" hearing with several of the requested documents, and he advised counsel of his bankruptcy in Case No. 09-37264-svk. Mr. Rankin was eventually excused from the hearing. A copy of the Order to Appear Before A Court Commissioner and Affidavit are attached hereto and marked as Exhibit I.

27. On November 25, 2014, an Affidavit was signed by Attorney Deborah Krusche Bruck of Bruck Law Offices, S.C. and presented as a basis for scheduling a Contempt Hearing before the Circuit Court that "said defendants refused to answer under oath, failed to provide the documents as ordered, or failed to appear at the time and place specified in said Order and affiant waited for a

6

period of thirty (30) minutes but said defendants failed to appear either in person or by attorney or any other person, whereupon said Court Commissioner noted said default".  Court Commissioner Joseph L. Cook thereupon issued an Order that the judgment debtors appear on January 5, 2015, at 10:00 a.m., before the Honorable Linda M. Van De Water, Waukesha County Circuit Court Judge.  A copy of the Affidavit and Order to Show Cause for Failure to Appear Before Court Commissioner is attached hereto, and marked as Exhibit J.

28.  On January 5, 2015, a hearing took place before Judge Van De Water, with Attorney Deborah Krusche Bruck appearing on behalf of the plaintiff, Grandview, and Attorney Michael Mack appearing on behalf of Michael and Linda Rankin; Michael Rankin also appeared in person. A copy of the transcript of the hearing is attached hereto and marked as Exhibit K.

29. During the hearing, Attorney Bruck acknowledge that Michael Rankin advised that he had filed bankruptcy, line 15-17, p. 1, but that no action had been taken to reopen the bankruptcy to add this particular creditor to the bankruptcy. Attorney Mack advised the Court that under case law, it was not necessary to reopen the bankruptcy to add the creditor in order for the Discharge to bar proceedings.

30. After hearing discussion from counsel regarding reopening the bankruptcy case, the Court scheduled a status hearing on the Contempt for March 16, 2015, at 8:30 am, to allow the same to occur.  The Court did not rule on a

continuing garnishment that was taking place against the earnings of one of the debtors.

31. On January 27, 2015, a motion to reopen case was filed in the underlying bankruptcy case no. 09-37264-svk.

32. At the hearing which took place on the motion to reopen on March 10, 2015, before Honorable Susan V. Kelley, U.S. Bankruptcy Judge, the Court granted the motion to reopen and ordered the garnishment which was taking place to cease.

33. At no time subsequent to being advised of the bankruptcy in September, 2011, did Grandview, bring an action in either State or Federal Bankruptcy Court to determine the dischargeability of this debt.

34. At no time subsequent to being advised of the bankruptcy by the debtor, Michael Rankin, at the supplemental hearing on November 25, 2014, did Bruck Law Offices, S.C. file an action in either State or Federal Bankruptcy Court on behalf of Grandview, an action to determine the dischargeability of this debt.

35. After being advised of the bankruptcy by Mr. Rankin on November 25, 2014, Bruck Law Offices, S.C. affirmatively submitted an Affidavit in order to have scheduled a Contempt Hearing with the Circuit Court, the purpose of which was to force the turnover by the Rankins of additional information to facilitate collection of the underlying judgment; and it also continued with a garnishment action thereafter until being order to cease the garnishment by

8

Judge Kelley on March 10, 2015.

## DISCHARGEABILITY OF DEBT

36. The debtors-plaintiffs, Michael Rankin and Linda Rankin, reallege and incorporate by reference the foregoing paragraphs of this Complaint.

37. The debt of Michael and Linda Rankin was a prepetition debt based upon a contract entered into between them and Grandview prior to the filing of their bankruptcy Petition.

38. The Notice of Bankruptcy Filing which was issued by the Clerk of the Bankruptcy Court upon the filing of Bankruptcy Case No. 09-37264-svk, by Michael and Linda Rankin, continued the language "Please Do Not File A Proof of Claim Unless You Receive a Notice to Do So". A copy of the Notice is attached hereto and marked as Exhibit L.

39. On January 30, 2010, the bankruptcy Trustee assigned to this bankruptcy case, Bruce A. Lanser, made a Report of No Distribution on the docket of this case.

40. On April 5, 2010, an Order Discharging the debtors was issued in this case.

41. That while the debt to Grandview was not listed by the debtors in their bankruptcy schedules, the failure to do so was understandable under the circumstances and not part of some fraudulent or other scheme.

42. The debt of Michael and Linda Rankin does not fall within any of the exceptions to discharge set forth in 11 U.S.C. section 523 except (3).

## VIOLATION OF THE DISCHARGE INJUNCTION

43. The debtors-plaintiffs, Michael Rankin and Linda Rankin, reallege and

9

incorporate by reference the foregoing paragraphs of this Complaint.

44. The prepetition debt owed to Grandview was discharged as of April 5, 2010.

45. Any actions taken by Grandview after April 5, 2010, in an attempt to collect this debt are in violation of the discharge injunction of 11 U.S.C. section 524(a).

46. The defendant, Grandview Plaza I, L.L.C, and its counsel, Bruck Law Offices, S.C., have continued to seek payment of this discharged prepetition debt after being notified of the bankruptcy filing up to and until specifically Ordered to cease the garnishment of the plaintiffs wages by Judge Kelley on March 10, 2015, at the hearing on the motion to reopen the bankruptcy case.

47. Under 11 U.S.C. section 105(a), this Court may award sanctions against defendants for willful violations of the discharge injunction, including but not limited to actual damages, attorneys' fees and costs, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Debtors-Plaintiffs, Michael Rankin and Linda Rankin, pray that this Court:

1.      Declare that the debt to defendant, Grandview is a dischargeable prepetition debt;

2.      Declare that the prepetition debt to defendant, Grandview, was therefore discharged when the Order of Discharge was entered by this Court on April 5, 2010;

3.      Declare that all actions taken by the defendant, Grandview, after April 5, 2010, to collect this prepetition discharged debt are in violation of the discharge

10

injunction of 11 U.S.C. section 524;

    4.    Declare that all actions taken by the defendant, Bruck Law Offices, S.C., after November 25, 2014, to collect this prepetition discharged debt are in violation of the discharge injunction of 11 U.S.C. section 524;

    5.    Declare that defendants are enjoined from taking any further actions to collect this prepetition discharged debt from debtors-plaintiffs pursuant to 11 U.S.C. § 524;

    6.    Award sanctions against defendants, Grandview, and Bruck Law Offices, S.C., for their intentional violations of the discharge injunction, including but not limited to actual damages, attorneys' fees and costs, and punitive damages; and

    6.    For such other and further relief as the Court may deem equitable and just.

Law Offices of Michael Mack
Attorneys for Debtors

By:    /s/ Michael G. Mack    
State Bar No. 1018553

P.O. ADDRESS:
10855 West Potter Road, Suite 14
Milwaukee, WI 53226
Telephone:   (414) 771-9200
Facsimile:   (414) 258-4987
email:   mgm@lawyer.com

LEASE

THIS LEASE entered into as of this 27ᵗʰ day of April, 2004, by and between Grandview Plaza I, LLC ("Landlord"), having an office at W228 N745 Westmound Drive, Waukesha, Wisconsin, 53186 and MLR Enterprises, Inc., having an office at 8102 River Valley Road, Ixonia, Wisconsin, 53036.

WITNESSETH:

In consideration of the mutual promises and covenants contained herein, the parties hereto agree as follows:

1. PREMISES

(a)  Description.  Landlord hereby leases to Tenant the premises (the "Premises") located within Landlord's property hereinafter referred to as the "Shopping Center" and more fully described in Exhibit "A" attached hereto and incorporated herein by reference containing approximately 1600 square feet of Floor Area, as hereinafter defined, designated as space 1830E, as outlined on the Site Plan, attached hereto and incorporated herein by reference as Exhibit "B", together with the non-exclusive use in common with others entitled thereto of the Common Areas as hereinafter defined.  It is understood that said Exhibit "B" sets forth the general layout of the Shopping Center but shall not be deemed as a warranty, representation or agreement on the part of the Landlord that the Shopping Center layout will be exactly as depicted on said Exhibit, and Landlord specifically reserves the right from time to time and without the consent of Tenant (i)  to change the number, size, height or locations of the buildings or Common Areas in the Shopping Center as Landlord may deem proper; (ii) to change or modify any means of ingress or egress; or (iii) to add additional land or buildings or both to the Shopping Center, provided, however, that Landlord's changes in (i) through (iii) above will not materially and adversely affect the visibility of the Premises from the remainder of the Shopping Center, from the entrances and exits to the Center and from the adjoining streets.  It is further understood that the exterior walls, load bearing walls, and roof of the Premises and the area beneath the Premises are not leased hereunder, and the use thereof, together with the right to

-1-

EXHIBIT A, p. 1

EXHIBIT
A
tabbies®
XXXXXXXXXXXXX
XXXXXXXXXXXXX
XXXXXXXXXXXXX

install, maintain, use, repair and replace pipes, ducts, conduits, wires, and structural elements leading through the Premises in locations which will not materially interfere with Tenant's use thereof are hereby reserved to the Landlord.

(b) <u>Definition of Lease</u>. Wherever the term is used herein, "Lease" shall be deemed to mean this lease agreement, any and all riders, addenda, amendments, and any exhibits attached hereto.

(c) <u>Utility Easement</u>. Landlord reserves the right to place, maintain, repair and replace utility lines, pipes, tunneling and the like in, under or through the Premises or to permit an authorized utility company to do the same, all as may be reasonably necessary or advisable for the servicing of the Premises or other portions of the Shopping Center.

(d) <u>Definition of Floor Area</u>. The term "Floor Area" shall, for purposes of this lease, mean the actual number of gross square feet of floor space within the exterior face of the exterior walls of the Premises (except party and interior walls in which case the center thereof instead of the exterior face shall be used, and except with respect to all entrances and exits as to which the exterior building line shall be used) not included within the Common Areas. No deduction shall be made from the "Floor Area" computed under the foregoing definition by reason of columns, stairs, escalators, elevators, or other interior construction or equipment.

## 2. TERM

(a) <u>Initial Term</u>. The initial term of this Lease shall be five (5) years. The "Commencement Date" of the initial term of this Lease shall occur on the date that Landlord substantially completes all of its work on the Premises required hereby (that may be completed prior to the commencement or completion of Tenant's work).

(b) <u>Extension Term</u>. The term of this Lease shall expire five (5) years after the Commencement Date, unless extended by Tenant. Provided that this Lease is in full force and effect and Tenant has performed all of its obligations and covenants hereunder, the Tenant shall have the option to extend this Lease for two (2) additional consecutive periods of five (5) years each. In order to extend this Lease for each such extension period, Tenant shall notify Landlord of its intent to extend the

-2-

Lease in writing at least six (6) months prior to the expiration of the then current lease term, time being of the essence with regard to such written notification.  Any extension shall be upon all of the terms and conditions as contained in this Lease.

(c)  <u>Computation of Lease Term</u>.  If the Commencement Date is other than the first day of a calendar month, the initial term of this Lease shall include that period of time between the fifth (5th) anniversary of the Commencement Date and the end of the calendar month in which such fifth anniversary date occurs.

3.  RENT

(a)  <u>Initial Base Rent</u>.  Tenant covenants and agrees to pay to Landlord during the term of this Lease and beginning one hundred thirty five (135) days after the Commencement Date, without notice or demand of any kind whatsoever, at the address hereinafter set forth or at such other address as Landlord may designate in writing to Tenant, without any deduction or set-off of any kind, the monthly base rent ("Rent") set forth below. (For clarification, all other charges and costs to Tenant will commence and accrue as of the Commencement Date, including without limitation, real estate taxes and assessments referred to in Section 4 below, "Common Area Charges" referred to in Section 6 below and insurance referred to in Section 11 below.)  The Rent shall be payable, in advance, on the first day of each month.  If Tenant fails to pay any Rent within five (5) days after the same is due, a late charge equal to ten percent (10%) of such Rent shall be assessed and immediately payable upon demand.  If the due date for the first Rent payment falls on any day other than the first day of a month, the first Rent payment shall be prorated based upon the days in such month occurring after such due date and shall be payable on such due date.

<u>Monthly Rent Schedule</u>

<u>Initial Lease Term</u>

| <u>Year</u> | <u>Annual</u> | <u>Monthly</u> | <u>Per Sq. Ft.</u> |
|------|-------------|-------------|-------------|
| 1 | $16,000.00* | $2,133.33 | $16.00 |
| 2 | $25,600.00 | $2,133.33 | $16.00 |
| 3 | $26,400.00 | $2,200.00 | $16.50 |
| 4 | $27,200.00 | $2,266.67 | $17.00 |
| 5 | $28,000.00 | $2,333.33 | $17.50 |

-3-

EXHIBIT A, p. 3

*Reflects base rent commencing 135 days after the
Commencement Date.

## Extension Period

| Year | Annual | Monthly | Per Sq. Ft. |
|------|--------|---------|-------------|
| 6 | $28,800.00 | $2,400.00 | $18.00 |
| 7 | $29,600.00 | $2,466.67 | $18.50 |
| 8 | $30,400.00 | $2,533.33 | $19.00 |
| 9 | $31,200.00 | $2,600.00 | $19.50 |
| 10 | $32,000.00 | $2,666.67 | $20.00 |
| 11-15 | Landlord and Tenant to negotiate the rent for years 11-15 based on then current market rents, provided that this option shall terminate if Landlord and Tenant do not mutually agree upon such rent at least five (5) months prior to the commencement of the eleventh (11th) year of the term of this Lease. | | |

(b)  Initial Base Rent Adjustment.  Not applicable.

(c)  Additional Rent.  All taxes, charges, costs and
expenses that Tenant assumes or agrees to pay hereunder, together
with all interest and penalties that may accrue thereon in the
event of the failure of Tenant to pay those items, and all other
damages, costs and expenses and sums that Landlord may suffer or
incur, or that may become due, by reason of any default of Tenant
or failure by Tenant to comply with the terms and conditions of
this Lease shall be deemed to be additional rent, and, in the
event of non-payment, Landlord shall have all the rights and
remedies as hereinafter provided for failure to pay rent.

## 4.  TAXES

(a)  Real Estate Taxes and Assessments.  Tenant agrees to
pay Tenant's proportionate share of all real estate taxes and
assessments, both general and special, levied or assessed by any
lawful authority, for each tax year during the term hereof
against the land, buildings and all other improvements within the
Shopping Center or against any land or improvements which may be
added thereto.  Tenant's proportionate share shall be the total

-4-

EXHIBIT A, p. 4

amount of such taxes and assessments multiplied by a fraction, the numerator of which shall be the number of square feet of Floor Area within the Premises and the denominator of which shall be the total number of square feet of rentable floor area within all buildings within the Shopping Center at the time such taxes were levied or assessed. To the extent that real estate taxes for the Shopping Center are reduced due to the tax exempt nature of any tenant in the Shopping Center, the Floor Area for such exempt tenant shall be excluded from the above referenced denominator. To the extent that a separate tax parcel exists or is created for any occupant of any portion of the Shopping Center, such separate tax parcel shall be excluded from the Shopping Center for purposes of this Section 4. Any change in Floor Area of the Shopping Center shall be deemed in effect on the first day of the next succeeding month following such change. Copies of tax bills submitted by Landlord to Tenant shall be conclusive evidence of the amount of such real estate taxes and assessments levied or assessed, as well as the item taxed.

(b) <u>Estimated Tax Deposit</u>. During the term of this Lease, Tenant shall pay to Landlord, monthly in advance, an amount equal to 1/12th of Tenant's proportionate share of real estate taxes and assessments for the current tax year, as reasonably estimated by Landlord. If Tenant's proportionate share of taxes with respect to any tax year is less than the total amount previously paid by Tenant for such period, the excess shall be credited against the payments with respect to real estate taxes next becoming due. If Tenant's proportionate share of taxes for any tax year exceeds the total amount previously paid by Tenant for such period, Tenant shall, upon receipt of invoices from Landlord, pay the difference between the actual amount paid by Tenant and Tenant's proportionate share of real estate taxes and assessments.

(c) <u>Right to Contest Assessments</u>. Tenant shall, at its expense, upon notice to Landlord have the right to contest any and all such real estate taxes in the name of and on behalf of the Landlord. Landlord shall, on the request of Tenant, cooperate in such contest by the Tenant, except for the cost thereof. If the result of any such contest shall be a reduction in the amount of the real estate taxes so contested, the net portion of each refund or recovery from the taxing authorities with respect to such real estate taxes after deduction of the cost of the contest, which is in the same proportion of the total refund or recovery as Tenant's share of taxes, shall belong to

-5-

the Tenant, and the balance shall belong to the Landlord.

(d) <u>Taxes On Tenant's Property</u>. Tenant shall be liable for and shall before delinquency pay all taxes and assessments of any kind or nature, and penalties and interest thereon, if any, levied against Tenant's property and any other personal property of any kind regardless of ownership located or installed in and upon the Premises, whether or not affixed to the realty. On demand by Landlord, Tenant shall furnish Landlord with satisfactory evidence of these payments. If at any time during any term hereof any of said property, whether or not belonging to Tenant, shall be taxed or assessed as part of the real property on which the Premises are located, and if Landlord, after written notice to Tenant, pays such taxes or assessments based upon such increased assessment, Tenant shall, upon written demand, reimburse Landlord for the taxes or assessments so levied against and paid for by the Landlord.

(e) <u>Rental Taxes</u>. If, at any time during the term of this Lease or any extended term hereof, the present method of taxation or assessment shall be changed so that the whole or any part of the taxes, assessments, levies or charges now or hereafter levied, assessed or imposed on the said real estate and improvements thereon, shall be transferred to the rentals received from the said real estate, the Tenant agrees and covenants to pay such taxes and assessments, whether levied on said real estate in whole or in part, or against said rentals in whole or in part.

5. CONDITION OF IMPROVEMENTS

Landlord has furnished to Tenant the building shell and other items set forth in Exhibit "C"", attached hereto and incorporated herein by reference. Except as therein provided, all interior, non-structural improvements to the Premises, including fixturization and other work on the front or interior of the Premises, shall be performed by Tenant at Tenant's sole cost and expense, and shall be performed in a good and workmanlike manner and otherwise in accordance with Exhibit "D". In the event of a dispute, Landlord's architect shall determine whether the work has been done in accordance with the terms of this Lease and such architect's decision shall be conclusive and binding. Tenant acknowledges that it is accepting the Premises in their "as is" condition and that Landlord is not furnishing any improvements, alterations, or additions to the Premises,

-6-

other than those set forth in Exhibit "C" hereto. By entry hereunder, Tenant shall be deemed to have accepted the Premises as being in good, sanitary order, condition and repair.

## 6. COMMON AREAS

(a) <u>Common Areas</u>. Landlord grants to Tenant and Tenant's customers and invitees the right to use, in common with all others to whom Landlord has or may hereafter grant rights to use the same, the Common Areas located within the Shopping Center. The term "Common Areas" as used in this Lease, shall mean the following, if provided: parking areas, roadways, pedestrian sidewalks, driveways, sidewalks, delivery areas, trash removal areas, landscaped areas, security areas, and public washrooms and all other areas or improvements which may be provided by Landlord for the common use of the tenants in the Shopping Center. The manner in which such areas and facilities shall be maintained and operated and the expenditures therefor shall be at the sole discretion of the Landlord. Landlord hereby reserves the following rights with respect to the Common Areas:

(i) To establish reasonable rules and regulations for the use thereof;

(ii) To use or permit the use of such Common Areas by others to whom Landlord may grant or may have granted such rights in such manner as Landlord may from time to time designate, including but not limited to special promotional events;

(iii) To close all or any portion thereof as may be deemed necessary by Landlord to make repairs or changes, to prevent a dedication thereof or the accrual of any rights to any person or the public therein; or to discourage non-customer use or parking;

(iv) To change the layout of such Common Areas, including the right to reasonably add to or subtract from their shape and size, whether by the addition of building improvements or otherwise; and

(v) To do such other acts in and to the Common Areas as in Landlord's sole judgment may be desirable.

(b) <u>Common Area Charge</u>. Tenant shall pay to Landlord as a

-7-

Case 15-02159-svk   Doc 1   Filed 04/01/15   Page 18 of 106

"Common Area Charge" a proportionate share of all costs and expenses of every kind and nature paid or incurred by Landlord in operating and maintaining the Shopping Center and the Common Areas. Tenant's Common Area Charge shall be determined by multiplying the total cost incurred by Landlord by a fraction, the numerator of which is the number of square feet of Floor Area within the Premises and the denominator of which is the total number of square feet of rentable Floor Area within all the buildings in the Shopping Center. To the extent that a separate parcel exists or is created for any occupant of any portion of the Shopping Center, to the extent that such occupant is responsible for any portion of Common Area Charges for such separate parcel, such separate parcel shall be excluded from the Shopping Center for purposes of any such portion of Common Area Charges. Any change in Floor Area of the Shopping Center shall be deemed in effect on the first day of the next succeeding month following such change.

By way of example but not by way of limitation, such costs and expenses incurred by Landlord in operating and maintaining the Shopping Center and Common Areas would typically include the cost of managing, operating, maintaining, repairing, cleaning, lighting, insuring, securing and policing the parking areas, drive ways and walk ways within the Shopping Center site of which the Premises are a part, power sweeping of the parking lot, repair of parking lot lights, repaving, general parking lot repairs, car stops, landscaping, electricity, rubbish removal, rubbish receptacles, snow removal, janitorial service, common area management, accounting, and billing services, maintenance repairs, signs and sign repairs, pest control and general Common Area repairs; repair or replacement of roofs, exterior and load bearing walls, and basement walls and/or foundation, if any, all to the extent not made a part of any premises leased to any tenant of the Shopping Center; repair and replacement of equipment servicing the Shopping Center.

Tenant's Common Area Charge shall be paid in monthly installments, in advance, on the first day of each month in an amount to be estimated by Landlord. Within ninety (90) days following the end of the period used by Landlord in estimating Landlord's cost, Landlord shall furnish to Tenant a statement of the actual amount of Tenant's proportionate share of such Common Area Charge for such period. Within fifteen (15) days thereafter, Tenant shall pay to Landlord any excess of the actual amount of Tenant's Common Area Charge over the estimated amounts

-8-

paid by Tenant.  If the estimated amounts paid by Tenant exceed the actual amount of Tenant's Common Area Charge for such period as shown by such statement, such excess shall be credited against the next monthly installments due from Tenant.

## 7.  UTILITIES

Tenant shall pay before delinquency, at its sole cost and expense, all charges for water, gas, heat, electricity, power, telephone service, and sewer charges charged or attributable to the Premises, and all other charges for services or utilities of any kind or nature used in, upon or about the Premises by Tenant. Landlord shall provide separate meters to the Premises for gas and electricity.  Water and sewer charges shall not be separately metered.  If any such services or utilities are not separately metered to the Premises, Tenant shall pay to Landlord its allocable share of the combined costs, expenses and charges. Such allocable share being defined as the proportion thereof which Tenant's estimated usage (as determined by Landlord's engineer, from time to time, in his sole discretion) bears to the total usage of all tenants served in the area covered by such combined costs, expenses and charges.  In no event shall Landlord be liable for any interruption or failure in the supply of any utility to the Premises.

## 8.  USE OF PREMISES BY TENANT

**Tenant acknowledges that Landlord has contractual obligations with other parties to restrict and/or prohibit certain uses of the Shopping Center, including the Premises, and that Landlord may agree to additional such restrictions and prohibitions in the future**.  Therefore, as an integral part of the consideration inducing Landlord to lease the Premises to Tenant upon the terms and conditions contained herein, **Tenant agrees that Tenant shall occupy and use the Premises exclusively for the purpose of operating an Extreme Pita sandwich shop serving items that appear on the Extreme Pita standard menu and for NO other purpose or purposes without the prior written consent of Landlord**.  Without limiting the generality of the foregoing, Tenant shall honor and comply with any current or future exclusive or prohibited use clauses that Landlord has or may grant to any other tenant or occupant of the Shopping Center, including without limitation, those exclusive and prohibited uses set forth on Exhibit F attached hereto and incorporated by reference herein, provided that no existing or future use granted

-9-

to any other tenant or occupant prevents Tenant from engaging the uses specified in this Section 8. Tenant shall continuously and uninterruptedly during the term of this Lease conduct its usual and customary business activity on the Premises, which shall be fully fixtured, stocked and staffed on all normal business days and during all normal business hours.

For so long as this Lease is in full force and effect and Tenant has performed all of its obligations and covenants hereunder, Landlord's leases of other space in the Shopping Center shall not allow any other tenant to sell or manufacture for sale a menu that consists of more than fifteen percent (15%) pita sandwiches or sandwiches made by using pitas as the encasing ingredient. This paragraph shall not apply to the store spaces in the Shopping Center currently leased to Office Depot or Walgreens.

## 9. TENANT'S COVENANTS WITH RESPECT TO OCCUPANCY

Tenant agrees:

(a) To occupy the Premises in a safe and careful manner, without committing or permitting waste, and in compliance with all laws, ordinances, rules, regulations and orders of any governmental bodies having jurisdiction over the Premises, including without limitation, compliance with all Environmental Laws (as defined below) and to permit no accumulations in or about the Premises of any petroleum, PCBs, asbestos or ureaformaldehyde insulation, any hazardous waste or toxic, pollutant, contaminant or other substance regulated by any state or federal statute, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, the Superfund Amendments and Reauthorization Act, the Resource Conservation and Recovery Act, the Toxic Substance Control Act, or any other statute or rule, regulation or order of any governmental agency having jurisdiction over the control of such wastes or substances, including but not limited to the United States Environmental Protection Agency and any applicable state or local agencies (all such statutes, rules, regulations or orders shall collectively be referred to herein as "Environmental Laws");

(b) To neither do nor suffer anything to be done or kept in or about the Premises which contravenes Landlord's insurance

-10-

EXHIBIT A, p. 10

(k)   To adequately heat and cool the Premises;

(l)   To permit no lien, notice of intention to file lien or other charges (whether arising out of work of any contractor, mechanic, laborer, or materialman or any mortgage, conditional sale, security agreement or chattel mortgage or otherwise) which might be or become a lien or encumbrance or charge upon the Premises or any part thereof or the income therefrom, and to suffer no other matter or thing whereby the estate, right and interest of the Landlord in the Premises or any part thereof might be impaired;

(m)   To solicit no business in the Common Areas, nor distribute handbills or other advertising matter to customers, nor place the same in or on automobiles in the Common Areas;

(n)   To comply with all reasonable rules and regulations which Landlord may from time to time establish for the use and care of the Premises, the Common Areas, and other facilities and buildings on the Shopping Center;

(o)   Tenant covenants and agrees that it will take no action which would violate Landlord's labor contracts, if any, affecting the Shopping Center, nor create any work stoppage, picketing, labor disruption or dispute, or any interference with the business of the Landlord or any tenant or occupant in the Shopping Center or with the rights and privileges of any customer or other person(s) lawfully in and upon said Shopping Center, nor cause any impairment or reduction of the good will of the Shopping Center; and

(p)   To operate no coin or vending machine or similar device for the sale of goods, food, beverage or services, including pay phones, pay lockers, pay toilets, or amusement devices without Landlord's prior written consent.

(q)   Tenant shall, at its own cost and expense, comply promptly and conform with all present and future laws, ordinances, rules, requirements and regulations of the federal, state, county and city governments of any and all governmental authorities or agencies affecting the Premises or its use, and Tenant shall, at its own cost and expense, make all additions, alterations or changes to the Premises, or any portion thereof, as may be required by any governmental authority or agency and

-12-

shall comply promptly with all present and future orders, rules, regulations and directives of any governmental authority or agency.

## 10. REPAIRS AND ALTERATIONS

(a) <u>Repairs by Landlord</u>. Subject to the provisions of subsection 6(b), Landlord shall keep the foundations, exterior walls and roof of the building in which the Premises are located, in good condition and repair, exclusive of the repairs required to be performed by Tenant in Subsection 10(b), and except for repairs required thereto by reason of the acts of Tenant, Tenant's employees, agents, invitees, licensees, or contractors. Tenant shall give Landlord written notice of the necessity for repairs coming to the attention of Tenant following which Landlord shall have a reasonable time to undertake and complete such repairs. The provisions of this Subsection shall not apply in the case of damage or destruction by fire or other casualty or by eminent domain, in which events the obligations of Landlord shall be controlled by either Section 12 or Section 14 hereof.

(b) <u>Repairs by Tenant</u>. Except as provided in Subsection 10(a), Tenant shall keep the Premises and every part thereof and any fixtures, facilities or equipment serving the Premises or contained therein, in good condition and repair, including, but not limited to, the heating, air conditioning, electrical, plumbing and sewer systems, the exterior and interior doors, door checks, door frames and door hardware, windows and window frames in both exterior and interior walls and all portions of the store front area, truck dock levelers or any other loading apparatus and shall make any replacements thereof and of all broken and cracked glass which may become necessary during the term of this Lease, and excepting any repairs to items of Landlord's original construction made necessary by reason of damage due to fire or other casualty covered by standard fire and extended coverage insurance. If Tenant refuses or neglects to commence or complete repairs promptly and adequately, Landlord may make or complete said repairs and Tenant shall pay the cost thereof to Landlord upon demand.

(c) <u>Alterations or Improvements by Tenant</u>. Tenant shall not, without Landlord's prior written consent, make, nor permit to be made, any alterations, additions or improvements to the Premises. Any alterations which may be permitted by Landlord shall be upon the condition that Tenant shall promptly pay all costs, expenses and charges thereof, shall make such alterations

-13-

and improvements in accordance with applicable laws and building codes and in a good and workmanlike manner, and shall fully and completely indemnify Landlord against any mechanic's lien or other liens or claims in connection with the making of such alterations and improvements. Tenant shall promptly repair any damages to the Premises, or to the building of which the Premises are a part, caused by any alterations, additions or improvements to the Premises by Tenant. Landlord reserves the right to approve any contractor employed by Tenant to make such alterations, additions or improvements provided that such approval shall not constitute a waiver of Tenant's duty to complete such work in a good and workmanlike manner and in accordance with applicable laws and building codes as hereinabove provided.

(d) Removal of Improvements. All items of Landlord's construction, all heating and air conditioning equipment, and all alterations and other improvements by Tenant shall become the property of Landlord and shall not be removed from the Premises, unless Landlord elects to require the removal of any or all such Tenant improvements, in which case Tenant shall promptly remove the same and repair any damages resulting from such removal. All trade fixtures, furniture, furnishings and signs installed in the Premises by Tenant and paid for by Tenant shall remain the property of Tenant and may be removed upon the expiration of the term of this Lease; provided (a) that any of such items as are affixed to the Premises and require severance may be removed only if Tenant repairs any damage caused by such removal and (b) that Tenant shall have fully performed all of the covenants and agreements to be performed by Tenant under the provisions of this Lease. If Tenant fails to remove such items from the Premises prior to the expiration or earlier termination of this Lease, all such trade fixtures, furniture, furnishings and signs shall become the property of the Landlord unless Landlord elects to require their removal in which case Tenant shall promptly remove same and restore the Premises to its prior condition.

(e) Return of Premises to "Whitebox". Tenant acknowledges that as an integral part of the consideration inducing Landlord to lease the Premises to Tenant upon the terms and conditions contained herein, including the rent to be paid be Tenant, Landlord shall have the right, at any time after termination of this Lease or termination of Tenant's right to possession of the Premises, to require Tenant, at Tenant's sole cost and expense, to return the Premises to a "Whitebox" condition. "Whitebox"

-14-

condition shall mean that the Premises shall be returned to the following condition (provided further that Landlord may require Tenant to perform some, but not all of the following, as Landlord may direct):

      (i)  front, rear and side demising walls, stripped of all wall coverings and primed and in a condition ready to accept paint (with all other interior walls removed);

      (ii) clean suspended acoustical ceiling tiles and grid, in "as new" condition;

      (iii) 2 x 4 lay in fluorescent lights, in "as new" condition;

      (iv) Bare concrete floor, stripped of all floor coverings and in a condition to accept new floor coverings;

      (v)  Restroom(s), electrical service, plumbing, and heating and air conditioning system all in a condition equal to the condition as of the execution of this lease.

Tenant shall promptly comply with any directions from Landlord regarding the foregoing, and if Tenant fails to so comply, Landlord may thereafter complete the same at Tenant's sole cost and expenses and Tenant agrees to reimburse the same to Landlord upon demand.

## 11. WAIVER OF CLAIMS, INDEMNITY AND INSURANCE

(a) <u>Waiver</u>. Neither Landlord nor Landlord's agents or servants shall be liable, and Tenant waives all claims for damage to persons or property sustained by Tenant or any occupant of the Premises or other part of the Shopping Center resulting from an accident occurring in or about the Premises, or any part of the Shopping Center, resulting from the disrepair of any part of the Premises or any part of the Shopping Center, or resulting from any act or neglect of any tenant, occupant, or any other person unless caused by the negligence of the Landlord, his agents, servants or employees.

(b) <u>Indemnification</u>. Tenant shall indemnify and save Landlord harmless from and against any and all liability, liens, claims, demands, damages, expenses, fees, including actual attorney's fees, costs, fines, penalties, suits, proceedings,

actions and causes of action of any and every kind and nature arising or growing out of or in any way connected with Tenant's use, occupancy, management or control of the Premises or Tenant's operations, conduct or activities in the Shopping Center, unless caused by the negligence of the Landlord, his agents, servants or employees.

Landlord shall indemnify and save Tenant harmless from and against any and all liability, liens, claims, demands, damages, expenses, fees, including actual attorney's fees, costs, fines, penalties, suits, proceedings, actions and causes of action of any and ever kind and nature arising or growing out of or in any way connected with Landlord's use, occupancy, management or control of the Shopping Center, unless caused by the negligence of any tenant, or such tenant's agents, servants, employees or customers.

(c) <u>Comprehensive General Liability Insurance</u>. Tenant agrees to carry Comprehensive General Liability Insurance including Broad Form General Liability Endorsement making specific reference to personal injury liability and fire legal liability endorsements, as well as liquor law liability endorsements, if such exposure exists. Said General Liability Insurance shall cover the Premises and the Tenant's use thereof, together with such contractual liability endorsement necessary to cover Tenant's obligations set forth in subsection 11(b), in companies and in a form satisfactory to Landlord. Such General Liability Insurance shall provide for a minimum of $2,000,000.00 combined single limit coverage for all operations, plus a minimum of $50,000.00 for the fire legal liability endorsement, and a copy of said policy or policies (or certificate thereof) shall be deposited with the Landlord prior to the date of any use or occupancy of the Premises by the Tenant. Said policy or policies shall name Landlord and Tenant as insureds and shall bear endorsements to the effect that the insurer agrees to notify Landlord not less than 30 days in advance of any modification or cancellation thereof.

(d) <u>Fire and Extended Coverage Insurance</u>. Landlord agrees to carry policies insuring the improvements on the Shopping Center against fire and such other perils as are normally covered by extended coverage endorsements, with an "All Risk" endorsement in the county where the Premises are located, in an amount equal to at least eighty percent (80%) of the full insurable value of such improvements, together with insurance against such other

-16-

risks (including loss of rent), and in such amounts as Landlord deems appropriate. Tenant agrees to reimburse Landlord for that portion of the total cost of the foregoing insurance as equals the product of Landlord's total premium expense (excluding the amount thereof attributable to insuring the Common Areas, for which provision has been made in Subsection 6(b)), by the ratio of the number of square feet of Floor Area within the Premises to the total number of square feet of floor area rentable within the buildings on the Shopping Center (any change in the Floor Area of the Shopping Center shall be deemed in effect on the first day of the next succeeding month following such change), such amount to be payable with the next installment of Rent due after Landlord bills Tenant therefor; provided, however, that Tenant shall have no rights in said policy or policies maintained by Landlord and shall not, by reason of such reimbursement, be entitled to be a named insured thereunder. In the event any of Landlord's policies insures premiums or risks other than the Shopping Center or the rents therefrom, the statement of the insurer shall be conclusive as to the portion of the total premium attributable to the Shopping Center. Tenant agrees to carry insurance against fire, vandalism and malicious mischief, and such other risks as are, from time to time, included in standard extended coverage endorsements, with an "All Risk" endorsement, and including a sprinkler leakage endorsement, insuring Tenant's stock-in-trade, trade fixtures, furniture, furnishings, special equipment, floor and wall coverings and all other items of personal property of Tenant located on or within the Premises, including full improvements and betterments endorsements, such coverage to be in an amount equal to at least eighty percent (80%) of replacement cost thereof. Prior to the Commencement Date of this Lease, Tenant shall furnish Landlord with a certificate evidencing such coverage.

(e) <u>Mutual Waiver of Subrogation</u>. Landlord and Tenant each agree to cause to be included in their respective policies of fire and extended coverage insurance the agreement of the issuer thereof that said policies shall not be invalidated by a waiver of claim by the insured against the Landlord or Tenant, as the case may be, and each will furnish evidence thereof to the other. Each party hereto does hereby remise, release and discharge the other party hereto, and any officer, agent, employee, or representative of such party, of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried

-17-

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 27 of 106

by the injured party at the time of such loss, damage or injury to the extent of any recovery by the injured party under such insurance.

(f) <u>Glass Insurance</u>.  Tenant shall be responsible for the maintenance of all glass and the immediate replacement of all broken or cracked glass in and about the Premises and shall carry adequate plate glass insurance to cover same.

(g) <u>Compliance</u>.  If Tenant shall not comply with its covenants made in this Section 11, Landlord may cause insurance as aforesaid to be issued, in such event Tenant agrees to pay as additional rent, the premium for such insurance upon Landlord's demand.

## 12.  DAMAGE AND DESTRUCTION

(a) <u>Insured Casualty</u>.  If, at any time after the execution of this Lease, the Premises, or any portion thereof, should be damaged or destroyed by any casualty insured under any fire and extended coverage insurance policy or other policies required on the part of Landlord to be maintained hereunder, the following provisions shall govern the rights and obligations of Landlord and Tenant:

(i)  If the damage or destruction occurs during the last three (3) years of the term of this Lease and is to the extent of twenty-five percent (25%) or more of the then current actual cash value of the improvements so damaged (whether or not Tenant elects to pay for such repair or restoration), either Landlord or Tenant may elect to terminate this Lease by giving at least fifteen (15) days written notice of said election to Tenant or Landlord, as the case may be, such notice to be given within thirty (30) days after the date of such damage or destruction.  If neither Landlord nor Tenant shall not so elect to terminate this Lease, Landlord shall repair, reconstruct or restore the Premises in accordance with the provisions of sub-paragraph (iii) below.

(ii) Irrespective of the extent of such damage or destruction, if the proceeds received or to be received by Landlord by reason of such damage or destruction under such fire and extended coverage insurance policy or policies required on the part of Landlord to be maintained hereunder

-18-

are, in the judgment of Landlord, inadequate to repair, reconstruct or restore the Premises to the condition in which the Premises were immediately prior to such damage or destruction (whether or not Tenant elects to reimburse Landlord for such deficiency), Landlord may elect to terminate this Lease by giving at least fifteen (15) days written notice of said election to Tenant, such notice to be given within thirty (30) days after Landlord ascertains that such proceeds are inadequate for that purpose. If Landlord shall not so elect to terminate this Lease, then Landlord shall repair, reconstruct or restore said Premises in accordance with the provisions of sub-paragraph (iii), below.

(iii) Except as provided in sub-paragraphs (i) and (ii) above, in the event the Premises, or any portion thereof, should be damaged or destroyed by any casualty insured under any fire and extended coverage insurance policy or policies required on the part of Landlord to be maintained hereunder, this Lease shall nevertheless continue in full force and effect (except as otherwise herein provided) and Landlord shall promptly commence and with due diligence, complete the repair, reconstruction or restoration of the Premises so far as practicable to the condition in which the Premises were immediately prior to such damage or destruction. Landlord's obligation under this paragraph shall, however, in no event exceed the scope of the work that was done by Landlord in the original construction and improvement of the Premises, nor shall Landlord be required to expend sums therefor in excess of the proceeds received or to be received by Landlord by reason of such damage or destruction.

(b) _Uninsured Casualty_. If at any time after the execution of this Lease the improvements on the Premises or any portion thereof should be damaged or destroyed by any casualty not required on the part of the Landlord to be insured against hereunder, then Landlord may, but shall have no obligation to, elect to repair, reconstruct or restore the Premises after any such damage or destruction thereto by giving at least fifteen (15) days written notice of said election to Tenant, such notice to be given within thirty (30) days after the date of such damage or destruction. If Landlord elects to repair, reconstruct or restore the Premises after such damage or destruction thereto, this Lease shall continue in full force and effect (except as otherwise herein provided) and Landlord shall promptly commence

-19-

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 29 of 106

and with due diligence complete the repair, reconstruction or restoration of the Premises so far as practicable to the condition to which the Premises were immediately prior to such damage or destruction. If Landlord fails to make such election then this Lease shall be deemed terminated as of the date of such damage or destruction, and all amounts paid or payable by Tenant to Landlord shall, where applicable, be prorated between Landlord and Tenant.

(c) <u>Tenant's Obligations</u>. In the event Landlord elects or is required hereunder to repair, reconstruct or restore the Premises after any damage or destruction thereto, Tenant shall, at its own expense, as soon as reasonably practicable replace or fully repair, reconstruct or restore its exterior signs, merchandise and Tenant's trade fixtures and property. Tenant hereby waives the provisions of any statute or law that may be in effect at the time of the occurrence of any such damage or destruction, under which a lease is automatically terminated or a tenant is given the right to terminate a lease upon such an occurrence.

(d) <u>Disclaimer of Insurance Proceeds</u>. Tenant shall have no interest in or claim to any portion of the proceeds of any insurance maintained by Landlord hereunder.

(e) <u>Abatement of Rent</u>. Tenant agrees at all times after any damage to or destruction of the improvements on the Premises, or any portion thereof, to continue the operation of its business therein to the extent practicable from the standpoint of good business, and in the event Landlord is required or elects to make any repairs, reconstruction or restoration of any damage or destruction to the Premises under any of the provisions of this paragraph, Tenant shall not be entitled to any damages by reason of any inconvenience or loss sustained by Tenant as a result thereof. During the period commencing with the date of any such damage or destruction which Landlord is required or elects hereunder to repair, reconstruct or restore, and ending with the completion of such repairs, reconstruction or restoration, all sums due hereunder shall be proportionately abated in an equal amount to the proportion thereof which the number of square feet of Floor Area in the Premises rendered untenable bears to the total number of square feet of Floor Area in the Premises immediately prior to such damage or destruction. The full amount of all rents and other sums due hereunder shall again become payable immediately upon the completion of such work of repair,

EXHIBIT A, p. 19

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 30 of 106

reconstruction or restoration. Except as expressly provided for herein, there shall be no reduction, change or abatement of any rental or other charge payable on the part of Tenant to Landlord hereunder, or in the method of computing, accounting or paying for the same.

(f) _Effective Termination_. In the event this Lease is terminated under any of the provisions of this paragraph, such termination shall become effective at the time and in accordance with the respective provisions herein contained for the termination of this Lease; provided, however, that all rentals and other charges on the part of Tenant to be paid hereunder shall be prorated and paid either as of the date of such damage or destruction, or as of the date Tenant ceases doing any business in, upon or from the Premises, whichever last occurs.

## 13. ASSIGNING AND SUBLETTING

(a) Tenant shall not sublet the Premises or any part thereof nor assign this Lease, or any interest therein, without in each case the prior written consent of the Landlord, which consent shall not be unreasonably withheld. Neither this Lease nor any interest therein shall be assignable as to the interest of Tenant by operation of law. Tenant shall not pledge, hypothecate or encumber this Lease, or any interest therein, without in each case first obtaining the written consent of Landlord, which consent shall not unreasonably be withheld. Any such assignment, transfer, pledge, hypothecation, encumbrance or sub-lease or the use of the Premises by any other person without such consent, shall be void. Any consent to any assignment, transfer, pledge, hypothecation, encumbrance or sub-lease or use of the Premises by any other person which may be given by Landlord shall not constitute a waiver by Landlord of the provisions of this paragraph or release the Tenant from the full performance by it of the covenants contained herein.

(b) If Tenant requests Landlord's consent to an assignment of the Lease or subletting of all of the Premises or any part thereof, it shall submit to Landlord, in writing, the name, address and financial statement together with such other information as the Landlord requires to determine whether there are commercially reasonable grounds for disapproving any sub-lease or assignment.

(c) No sub-lease of the Premises or portion thereof, or

-21-

assignment of this Lease, shall be for a period of less than one (1) year, nor shall any sub-lease extend beyond the expiration date of the term of this Lease.

(d) Tenant shall pay to Landlord as additional rent, within five (5) business days following the due dates of such sums;

(i) Seventy-five percent (75%) of the amount by which the rent payable by such assignee or sub-lessee to Tenant throughout the term exceeds the rent otherwise payable by Tenant to Landlord under this Lease; plus

(ii) Seventy-five percent (75%) of all other consideration payable for the assignment or sub-lease of this Lease including, but not limited to, key money and excess security deposit.

The foregoing is a freely negotiated arrangement between Landlord and Tenant respecting the allocation of appreciated rentals. This covenant shall survive the expiration of the term of this Lease.

(e) Any notice by Tenant to Landlord pursuant to this paragraph of a proposed assignment or sub-letting, shall be accompanied by a payment of $250.00 as a non-refundable fee for Landlord's time and the processing of Tenant's request for Landlord's consent. In addition to said fee, Tenant shall reimburse Landlord for reasonable attorney's and accountant's fees incurred by Landlord in connection with such review and the preparation of documents in connection therewith.

(f) Each permitted assignee, transferee or sub-lessee shall assume and be deemed to have assumed this Lease and shall be and remain liable jointly and severally with Tenant for the payment of the rent and for the due performance or satisfaction of all of the provisions, covenants and conditions contained herein. No permitted assignment or sub-lease shall be binding on Landlord unless such assignee, transferee or sub-lessee or Tenant shall deliver to Landlord a copy of a fully-executed sub-lease or assignment of lease agreement which contains a covenant of assumption by the assignee or sub-lessee.

(g) If Tenant is a partnership, a transfer of any interest of a general partner, a withdrawal of any general partner from the partnership or the dissolution of the partnership, shall be

-22-

EXHIBIT A, p. 21

deemed to be an assignment of this Lease.

(h)  If Tenant is a corporation (unless Tenant is a public corporation, i.e., whose stock is regularly traded on a national stock exchange or regularly traded in the over-the-counter market), any dissolution, merger, consolidation or other reorganization of Tenant or sale or other transfer of a percentage of capital stock of Tenant which results in a change of controlling persons, or the sale or other transfer of substantially all of the assets of Tenant, shall be deemed to be an assignment of this Lease.

(i)  Assignment as a Result of Tenant's Bankruptcy.

(i)  If this Lease is assigned to any person or entity pursuant to provisions of the federal bankruptcy code (the "Bankruptcy Code"), any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall remain the exclusive property of Landlord, and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code.  Any and all monies or other consideration constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and be promptly paid to or turned over to Landlord.

(ii) If Tenant, pursuant to this Lease, proposes to assign the same pursuant to the provisions of the Bankruptcy Code to any person or entity who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then notice of the proposed assignment setting forth (1) the name and address of such person, (2) all of the terms and conditions of such offer, and (3) the assurances referred to in Sec. 365(b)(3) of the Bankruptcy Code, shall be given to the Landlord by the Tenant no later than twenty (20) days after receipt of such offer by the Tenant, but in any event no later than ten (10) days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option, to be exercised by notice to the Tenant given at any time prior to the effective date of such proposed assignment, to accept an

-23-

assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person, less any brokerage commissions which may be payable out of the consideration to be paid such person for the assignment of this Lease.

(iii)    Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on or after the date of such assignment.  Any such assignee shall, upon demand, execute and deliver to Landlord an instrument confirming such assumption.

(iv) The following factors may be considered by the Landlord as necessary in order to determine whether or not the proposed assignee has furnished Landlord with  adequate assurances of its ability to perform the obligations of this Lease:

(1)  The adequacy of a security deposit.

(2)  Net worth and other financial elements of the proposed assignee.

(3)  Demonstration that percentage rental, if any, will not decline substantially and that assumption or assignment will not disrupt the tenant mix or balance in the Shopping Center.

(v)   It is acknowledged hereby that this is a lease within a shopping center within the meaning of Sec. 365(b)(3) of the Bankruptcy Code.

(vi) In the event Landlord rejects the proposed assignee, the rights and obligations of the parties hereto shall continue to be governed by the terms of this Lease, and Tenant shall have all the rights of a tenant under applicable Wisconsin law.

(j)  _Effect of Violation_.  Any assignment, mortgage, pledge, hypothecation, encumbrance, sub-letting or license of this Lease, the leasehold estate hereby created, or the Premises or any portion thereof, either voluntarily or involuntarily, whether by operation of law or otherwise, or any other action by Tenant in

-24-

EXHIBIT A, p. 23

violation of the restrictions set forth in this paragraph, without the prior written consent of Landlord, shall be null and void and shall, at the option of Landlord, terminate this Lease.

## 14. EMINENT DOMAIN

In the event the Shopping Center or any part thereof shall be taken or condemned either permanently or temporarily for any public or quasi-public use or purpose by any authority in appropriation proceedings or by any right of eminent domain, the entire compensation award therefor, including, but not limited to, all damages as compensation for diminution in value of the leasehold, reversion and fee, shall belong to the Landlord without any deduction therefrom for any present or future estate of Tenant, and Tenant hereby assigns to Landlord all its right, title and interest to any such award. However, Tenant shall have the right to recover from the condemning authority, but not from Landlord, such compensation as may be separately awarded to Tenant on account of interruption of Tenant's business and for moving and relocation expenses.

In the event of a taking under the power of eminent domain of more than (i) thirty percent (30%) of the Premises, (ii) thirty percent (30%) of the Common Areas, or (iii) fifty percent (50%) of the floor area of all buildings located in the Shopping Center (as constituted prior to such taking) either Landlord or Tenant shall have the right to terminate this Lease by notice in writing given within ninety (90) days after the condemning authority takes possession, in which event all rents and other charges shall be prorated as of the date of such termination.

In the event of a taking of any portion of the Premises not resulting in a termination of this Lease, Landlord shall use so much of the proceeds of Landlord's award for the Premises as is required therefor to restore the Premises to a complete architectural unit and this Lease shall continue in effect with respect to the balance of the Premises, with a reduction of Rent in proportion to the portion of the Premises taken.

## 15. DEFAULT

(a) _Default_. The following shall be considered for all purposes to be defaults under and breaches of this Lease:

(i)  any failure of Tenant to pay any rent or other

-25-

amount when due hereunder;

(ii) any failure by Tenant to perform or observe any other of the terms, provisions, conditions and covenants of this Lease for more than ten days after written notice of such failure;

(iii) Landlord determining that Tenant has submitted any false report required to be furnished hereunder;

(iv) Tenant shall not do anything upon or in connection with the Premises or the construction of any part thereof which directly or indirectly interferes in any way with, or results in a work stoppage in connection with, construction of any part of the Shopping Center or any other tenant's space;

(v) if a receiver of any property of Tenant on the Premises is appointed, or Tenant's interest in the Premises is levied upon by legal process and Tenant fails within thirty (30) days to cause the vacation or dismissal of such appointment, levy or adjudication, or if Tenant files a voluntary petition in bankruptcy, disposes of all or substantially all of its assets in bulk, or makes an assignment for the benefit of its creditors;

(vi) if Tenant abandons or vacates or does not do business in the Premises for ten (10) days;

(vii) this Lease or Tenant's interest herein or in the Premises or any improvements thereon or any property of Tenant are executed upon or attached; or

(viii) the Premises come into the hands of any person other than expressly permitted under this Lease.

In any such event, and without further grace period, demand or notice (the same being hereby waived by Tenant), Landlord, in addition to all other rights or remedies it may have, shall have the right thereupon or at any time thereafter to terminate this Lease by giving notice to Tenant stating the date upon which such termination shall be effective, and shall have the right, either before or after any such termination, to re-enter and take possession of the Premises, remove all persons and property from the Premises, store such property at Tenant's expense, and sell such property if necessary to satisfy any deficiency in payments

-26-

by Tenant as required hereunder, all without notice or resort to
legal process and without being deemed guilty of trespass or
becoming liable for any loss or damage occasioned thereby.
Nothing herein shall be construed to require Landlord to give any
notice before exercising any of its rights and remedies provided
for in this Lease. Notwithstanding anything to the contrary
herein contained, if Tenant commits any default hereunder for or
precedent to which or with respect to which notice is herein
required, and commits such defaults within twelve (12) months
thereof, no notice shall thereafter be required to be given by
Landlord as to or precedent to any such subsequent default during
such twelve (12) month period (as Tenant hereby waives the same)
before exercising any or all remedies available to Landlord.

(b) Remedies. If Landlord re-enters as above provided, or
if it takes possession pursuant to legal proceedings or
otherwise, it may either terminate this Lease or it may, from
time to time, without terminating this Lease, make such
alterations and repairs as it deems advisable to relet the
Premises, or any part thereof for such term or terms (which may
extend beyond the Lease Term) and at such rentals and upon such
other terms and conditions as Landlord in its sole discretion
deems advisable; upon each such reletting all rentals received by
Landlord therefrom shall be applied, first, to any indebtedness
other than rent due hereunder from Tenant to Landlord; second, to
pay any costs and expenses of reletting, including brokers and
attorneys' fees and costs of alterations and repairs; third, to
rent due hereunder, and the residue, if any, shall be held by
Landlord and applied in payment of future rent as it becomes due
hereunder.

In the event Landlord either terminates this Lease or relets
the Premises, both as provided above, Landlord shall have the
right to recover the worth at the time of such termination or
reletting of (1) the unpaid rent and additional rent which had
been earned at the time of such termination or reletting; and (2)
the unpaid rent and additional rent for the balance of the term
of this Lease which would have been payable after such
termination or reletting in excess of the amount of such rent and
additional rent that Tenant proves could have been otherwise
reasonably collected by Landlord. The total amount of the
foregoing shall be due from Tenant to Landlord immediately upon
termination or reletting. No reentry or taking possession of the
Premises by Landlord shall be construed as an election to
terminate this Lease unless a written notice of such termination

-27-

Case 15-02159-svk   Doc 1   Filed 04/01/15   Page 37 of 106

is given by Landlord.

In addition to the foregoing and any other remedies Landlord may have, Landlord may recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to, the cost of recovering possession of the Premises; expenses of re-letting, including necessary renovation and alteration of the Premises, reasonable attorney's fees, and any real estate commissions actually paid; and that portion of any leasing commission paid by Landlord applicable to the unexpired term of this Lease.

(c) Covenants. The covenants to pay rent and other amounts hereunder are independent covenants and Tenant shall have no right to hold back, offset or fail to pay any such amounts for default by Landlord or any other reason whatsoever.

(d) Waiver of Rights of Redemption. To the extent permitted by law, Tenant waives any and all rights of redemption granted by or under any present or future laws if Tenant is evicted or dispossessed for any cause, or if Landlord obtains possession of the Premises due to Tenant's default hereunder or otherwise.

(e) Cumulative Rights. The rights and remedies of Landlord under this Lease shall be cumulative and the exercise of any of them shall not be exclusive of any other right or remedy provided by this Lease or allowed by law.

(f) Landlord's Right to Perform. Landlord shall have the right, but not the obligation, at any time after any applicable default by Tenant in the performance of Tenant's obligations pursuant this Lease, to make any payment or perform any act otherwise required of Tenant, and in exercising such right, to incur necessary and incidental costs and expenses, including reasonable attorney fees. The exercise of this right shall not constitute a satisfaction of any of Tenant's obligations or a waiver of any default. All payments made and all costs and expenses incurred in connection with any exercise of such right shall be immediately reimbursed by Tenant to Landlord, and all such payments, costs and expenses shall be deemed additional rent pursuant to this Lease.

16. SECURITY DEPOSIT

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 38 of 106

To secure the faithful performance by Tenant of the covenants, conditions and agreements set forth in this Lease to be performed by it, Tenant has deposited with Landlord the sum of Two Thousand One Hundred Thirty Three and 33/100 Dollars ($2,133.33) on the understanding:

(a)  that such deposit or any portion thereof may, in Landlord's sole discretion, be applied to the curing of any default, including but not limited to rent default, that may exist, without prejudice to any other remedy or remedies which the Landlord may have on account thereof, and upon such application Tenant shall pay Landlord on demand the amount so applied which shall be added to the security deposit so that same will be restored to its original amount;

(b)  that should the Premises be transferred by Landlord, the security deposit or any balance thereof may be turned over to Landlord's successor or transferee, and Tenant agrees to look solely to such successor or transferee for such application or return;

(c)  that Landlord or its successors shall not be obligated to hold the security deposit as a separate fund, but may commingle it with other funds; and

(d)  that if Tenant shall faithfully perform all of the covenants and agreements in this Lease contained on the part of Tenant to be performed, the security deposit, or any then remaining balance thereof, shall be returned to Tenant, without interest, within thirty (30) days after the expiration of the terms hereof.

## 17.  NOTICES

Whenever in this Lease it shall be required or permitted that notice be given by either party hereto to the other, such notice shall be forwarded by certified mail addressed as follows:

To the Landlord:

> Grandview Plaza I, LLC
> c/o Redmond Ventures, A Wisconsin Limited Partnership
> W228 N745 Westmound Drive
> Waukesha, WI 53186

-29-

EXHIBIT A, p. 28

To the Tenant:

> MLR Enterprises, Inc.
> c/o Michael and Linda Rankin
> N8102 River Valley Road
> Ixonia, WI 53036

or at such other address specified in writing by either party.

It is further agreed that either of the parties hereto will promptly submit a copy of any notice received by such party from any third party affecting the rights of either party under this Lease.

## 18.  MORTGAGE SUBORDINATION

This Lease is subject and subordinate to any existing mortgage or mortgages that are a lien on the Premises herein demised as of the date on which this Lease is consummated, and shall be subject and subordinate to any new mortgage or mortgages placed on the demised Premises by the Landlord, or to any renewal, replacement or extension of any existing mortgage or mortgages or of any new mortgage or mortgages. Landlord agrees to endeavor to obtain from the mortgagee of each such mortgage an agreement acceptable to such mortgagee under which such mortgagee agrees to recognize this Lease of Tenant in the event of foreclosure if the Tenant is not then in default, so long as the Tenant pays the rent, and observes and performs all of the other obligations, provisions, covenants, and conditions required of the Tenant by this Lease. In order to confirm this Lease's subordination, the Tenant hereby covenants and agrees that it will, at any time after the date of this Lease, execute and deliver an instrument subordinating this Lease to any mortgage currently existing or proposed to exist upon the request of the Landlord.

## 19.  ESTOPPEL CERTIFICATES AND ATTORNMENT

(a)  _Certificate_.  Within ten (10) days after Landlord's request Tenant shall deliver, executed in recordable form, a declaration to any person designated by Landlord: (1) ratifying this lease; (2) stating the Commencement and termination dates; and (3) certifying (a) that this Lease is in full force and effect and has not been assigned, modified, supplemented or

-30-

amended (except by such writing as shall be stated), (b) that all conditions under this Lease to be performed by Landlord have been satisfied (stating exceptions, if any), (c) no defenses or offsets against the enforcement of this Lease by Landlord exist (or stating those claimed), (d) advance rent, if any paid by Tenant, (e) the date to which rent has been paid, (f) the amount of security deposited with Landlord, and (4) provide recent financial statements of the Tenant, and such other information as Landlord reasonably requires. Persons receiving such statements shall be entitled to rely upon them.

(b) <u>Attornment</u>. Tenant shall, in the event of a sale or assignment of Landlord's interest in the Premises or the building in which the Premises are located or this Lease, or if the Premises or such building comes into the hands of a mortgagee, ground lessor or any other person whether because of a mortgage foreclosure, exercise of a power of sale under a mortgage, termination of the ground lease, or otherwise, attorn to the purchaser or such mortgagee or other person and recognize the same as Landlord hereunder. Tenant shall execute, at Landlord's request any attornment agreement required by any mortgagee, ground lessor or other such person to be executed, containing such provisions as such mortgagee, ground lessor or other person requires.

(c) <u>Failure to Execute Instruments</u>. Tenant's failure to execute instruments or certificates provided for in this Article within ten (10) days after the mailing by Landlord of a written request shall be a default under this Lease.

## 20. QUIET ENJOYMENT

Landlord hereby covenants and agrees that if Tenant shall perform all the covenants and agreements herein stipulated to be performed on Tenant's part, Tenant shall at all times during the continuance hereof have the peaceable and quiet enjoyment and possession of the Premises without any interruption from Landlord or any person or persons lawfully claiming the Premises, subject to Paragraph 18 herein.

## 21. SIGNS AND ADVERTISING

Tenant will not place or cause to be placed or maintained any sign or advertising matter of any kind anywhere within the

-31-

Shopping Center, without Landlord's prior written approval. Tenant agrees to purchase and install Extreme Pita's standard identification sign for the Tenant's storefront, such sign to be expressly subject to Landlord's written approval, not to be unreasonably withheld, and City of Waukesha ordinances, and to be installed at locations designated by Landlord. Such storefront signage shall be comprised of fascia signage permitted by municipal code and other applicable laws and regulations, provide that any such fascia signage must be comprised of individual letters (i.e., no "box" signs), individually mounted on a raceway, which such raceway shall be the same color as the fascia. Tenant acknowledges that Tenant shall have no right to use any pylon sign serving the shopping center.

## 22. MISCELLANEOUS PROVISIONS

(a) <u>Accord and Satisfaction</u>. No payment by Tenant or receipt by Landlord of a lesser amount than the rental herein stipulated shall be deemed to be other than on account of the earliest stipulated rent nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided for in this Lease or available at law or in equity.

(b) <u>Waiver</u>. No waiver of any condition or legal right or remedy shall be implied by the failure of Landlord to declare a forfeiture, or for any other reason, and no waiver of any condition or covenant shall be valid unless it be in writing signed by Landlord. No waiver by Landlord with respect to one or more tenants or occupants of the Shopping Center shall constitute a waiver in favor of any other tenant, nor shall the waiver of a breach of any condition be claimed or pleaded to excuse a future breach of the same condition or covenant.

(c) <u>Broker's Commission</u>. Tenant warrants that, except for Tenant's agent, Mid-America Real Estate of Wisconsin LLC, Tenant has dealt with no other broker and there are no other claims for broker's commission or finder's fees in connection with this Lease resulting from the actions of Tenant. Tenant agrees to indemnify and save Landlord harmless from any liability that may arise from any other such claims, including reasonable attorney fees. Landlord and Tenant agree that Landlord shall pay a total

-32-

brokerage commission relating to this Lease in an amount of Three Dollars ($3.00) per square foot. Such brokerage commission shall be divided between Mid-America Real Estate of Wisconsin LLC and Commercial Property Associates, Inc. (Landlord's broker), as they may agree.

    (d) <u>No Partnership</u>. Landlord does not, in any way or for any purpose, become a partner of Tenant in the conduct of his business, or otherwise, or joint venturer or a member of a joint enterprise with Tenant.

    (e) <u>Section Headings</u>. The section headings are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of this Lease nor in any way affect this Lease.

    (f) <u>Lease Inures to Benefit of Assignees</u>. This Lease and all the covenants, provisions and conditions herein contained shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns, respectively, of the parties hereto, provided, however, that no assignments by, from, through or under Tenant in violation of the provisions hereof shall vest in the assigns any right, title or interest whatever.

    (g) <u>Entire Agreement</u>. This Lease, including any rider or amendments, and the exhibits attached hereto set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

    (h) <u>Surrender and Holding Over</u>. Tenant shall deliver up and surrender to Landlord possession of the Premises upon the expiration of the Lease, or its termination in any way, in as good condition and repair as the same shall be at the commencement of said term (damage by fire and other perils covered by standard fire and extended coverage insurance and ordinary wear and decay only excepted). Should Tenant remain in possession of the Premises after any termination of this Lease, no tenancy or interest in the Premises shall result therefrom but

-33-

the amount of rent or additional rent, size and location of the Premises, the duration of the term of this Lease, or which otherwise materially increases Tenant's burdens or decreases Tenant's benefits hereunder. On Landlord's written request, Tenant shall promptly furnish the Landlord or Landlord's mortgagee, from time to time, with financial statements reflecting Tenant's current financial condition.

(o) Right of Entry. Landlord or Landlord's agent shall have the right to enter the Premises at all reasonable times to examine the same, and to show them to prospective purchasers or mortgagees of the building, and to make such repairs, alterations, improvements, or additions as Landlord may deem necessary or desirable, and Landlord shall be allowed to take all material into and upon said Premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part, and the rent reserved shall in no wise abate while said repairs, alterations, improvements, or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise, provided, Landlord performs such repairs, alterations, improvements or additions in a manner so as to cause the least disruption to Tenant's business as is reasonable under the circumstances. During the six months prior to the expiration of the term of this Lease or any extended term, Landlord may exhibit the Premises to prospective tenants and place upon the Premises the usual notices "To Let" or "For Rent" which notices Tenant shall permit to remain thereon without molestation. In the case of emergency, the existence of which shall be determined by Landlord, if Tenant shall not be present to permit entry, Landlord or its representatives may enter the Premises forcibly without rendering Landlord or its representatives liable or affecting Tenant's obligations under this Lease.

(p) Liability of Landlord. If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed and, as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levy thereon against the right, title and interest of Landlord in the Shopping Center as the same may then be encumbered and neither Landlord nor if Landlord be a partnership, any of the partners comprising such partnership shall be liable for any deficiency. It is understood that in no event shall Tenant have any right to levy execution against any property of Landlord other than its interest in the

-35-

construed against one party by reason of the rule of construction
that a document is to be construed more strictly against the
person who himself or through his agent prepared the same, it
being understood and agreed that both parties have participated
in the preparation hereof.

(x) <u>Past Due Rent</u>. If Tenant fails to pay any rent or
other charge when the same is due, the unpaid amount shall, at
Landlord's option and without waiving any other right of
Landlord, bear interest from the due date to the date of payment
at the greater of twelve percent (12%) per annum or the highest
interest allowable by law.

(y) <u>Liability Limitation</u>. If, in connection with or as a
consequence of a sale, transfer or other disposition of
Landlord's interest in the Shopping Center, any party who is a
landlord ceases to be an owner of the reversionary interest in
the Premises, such party shall be entirely freed and relieved
from the performance and observance thereafter of all covenants
and obligations hereunder on the part of Landlord to be performed
and observed, it being understood and agreed in such event (and
it shall be deemed and construed as a covenant running with the
land) that the person or entity succeeding to Landlord's
ownership of said reversionary interest shall thereupon and
thereafter assume, and perform and observe, any and all such
covenants and obligations of the Landlord.

(z) <u>Authority</u>. Tenant agrees that if it is executing this
Lease in a capacity other than individually, that the execution
and delivery of this Lease has been duly authorized and the
officers or partners who are executing this Lease have the full
power, authority and right to do so, and that such execution is
sufficient and legally binding on Tenant to enable the Lease to
be enforceable in accordance with its terms.

(aa) <u>Other Tenants</u>. If the names of any other tenants or
occupants in the Shopping Center or the nature of the business to
be conducted by any other tenants or occupants are shown on any
exhibit attached to this Lease, or Landlord otherwise informs
Tenant of the same, the names of such other tenants or occupants
or the nature of any business to be conducted in the Shopping
Center are expressly made for illustrative purposes only, and no
representations or warranties are made with respect to other
tenants or occupants in the Shopping Center or other businesses
which may be conducted therein. Landlord further reserves the

-37-

# EXHIBIT A

## LEGAL DESCRIPTION OF THE SHOPPING CENTER

Lots One (1), Two (2) and Three (3) of Certified Survey Map No. 9718, recorded in the Office of Register of Deeds for Waukesha County as Document No. 3125477, and being a part of Parcel Two (2) of Certified Survey Map No. 8946 and also being a part of the southeast quarter of the northwest quarter of Section 28, Township 7 North, Range 19 East, in the City of Waukesha, County of Waukesha, State of Wisconsin.

Lot One (1) of Certified Survey Map No. 9719, recorded in the Office of Register of Deeds for Waukesha County as Document No. 3125478, and being all of Parcel One (1), all of Parcel Three (3) and part of Parcel Two (2) of Certified Survey Map No. 8946 and also being a part of the southeast quarter of the northwest quarter of Section 28, Township 7 North, Range 19 East, in the City of Waukesha, County of Waukesha, State of Wisconsin.

-40-

EXHIBIT B


<u>SITE PLAN SHOWING THE GENERAL LAYOUT OF THE SHOPPING CENTER</u>
<u>AND THE LOCATION OF THE PREMISES THEREIN</u>

See attached page


-41-

EXHIBIT A,  p. 36

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 47 of 106

EXHIBIT B

## SITE PLAN SHOWING THE GENERAL LAYOUT OF THE SHOPPING CENTER AND THE LOCATION OF THE PREMISES THEREIN



EXHIBIT C
DESCRIPTION OF LANDLORD'S WORK


Landlord's work to the Premises shall be limited to the installation of the following:

1. Two (2) ADA compliant public restrooms installed per state and city specifications.

2. 200 amp, 3 phase electrical panel.

3. Front and rear door similar to other store space in the Shopping Center.

4. Floor slab.

5. A 7.5 ton HVAC unit.

-42-

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 49 of 106

EXHIBIT D
DESCRIPTION OF TENANT'S WORK

Tenant, at its sole cost and expense, shall perform all work necessary to open and conduct business in the Premises as a first class restaurant (except for Landlord's work specified in Exhibit C above). Tenant agrees that its work shall be done in compliance with applicable building codes and with plans and specifications which shall be approved by Landlord prior to the commencement of Tenant's work.

As provided in the Lease, as additional consideration inducing Landlord to enter into the Lease, Tenant agrees to accept bids from The Redmond Company, a corporation affiliated with Landlord, for the construction contract to construct Tenant's improvements to the Premises (the "Construction Project"). If The Redmond Company is the low bidder for the Construction Project, Tenant shall award the construction contract for the same to The Redmond Company. If The Redmond Company is not the low bidder for the Construction Project, Tenant shall provide written notice of the same to The Redmond Company and allow The Redmond Company ten (10) days to match the lowest bid. If The Redmond Company matches such lowest bid within such 10 days, Tenant shall award the construction contract for the Construction Project to The Redmond Company. If The Redmond Company does not match such lowest bid within such 10 days, Tenant shall be free to award the construction contract for the Construction Project to any other bidder.

-43-

EXHIBIT E

## RULES AND REGULATIONS

1.  All deliveries are to be made to designated service or receiving areas and Tenant shall request delivery trucks to approach their service or receiving areas by designated service routes and drives.

2.  Tractor trailers which must be unhooked or parked must use steel plates under dolly wheels to prevent damage to the asphalt paving surface.  In addition, wheel blocking must be available for use.  Tractor trailers are to be removed from the loading areas after unloading.  No parking or storing of such trailers will be permitted in the Shopping Center.

3.  Tenant is responsible for storage and removal of his trash, refuse and garbage.  Tenant shall not dispose of the following items in sinks or commodes: plastic products (plastic bags, straws, boxes); sanitary napkins; tea bags; cooking fats; cooking oils; any meat scraps or cutting residue; petroleum products (gasoline, naphtha, kerosene, lubricating oils); paint products (thinner, brushes); or any other item which the same are not designed to receive.  All Store Floor Area of Tenant including vestibules, entrances and returns, doors, fixtures, windows and plate glass, shall be maintained in a safe, neat and clean condition.

4.  Other than as permitted under the provisions of Section 21, Tenant shall not permit or suffer any advertising medium to be placed on walls, on Tenant's exterior windows, on standards in the Common Area, if any, on the sidewalks or on the parking lot areas or light poles.  No permission, expressed or implied, is granted to exhibit or display any banner, pennant, sign, and trade or seasonal decoration of any size, style or material within the Shopping Center, outside the Premises.

5.  Tenant shall not permit or suffer the use of any advertising medium which can be heard or experienced outside of the Premises, including, without limiting the generality of the foregoing, flashing lights, searchlights, loud speakers, phonographs, radios, or television.  No radio, television or other communication antenna equipment or device is to be mounted, attached or secured to any part of the roof, exterior surface, or anywhere outside the Premises, unless Landlord has previously given its written consent.

6.  Tenant shall not permit or suffer merchandise of any kind at any time to be placed, exhibited or displayed outside of its Premises, nor shall Tenant use the exterior sidewalks or exterior walkways of its Premises to display, store or place any merchandise.  No sale of merchandise by tenant sale, truck load sale or the like, shall be permitted on the parking lot or other common areas.

7.  Tenant shall not permit or suffer any portion of the Premises to be used for lodging purposes.

-44-

8. Tenant shall not, in or on any part of the Common Area:

(a) Vend, peddle, or solicit orders for sale or distribution of any merchandise, device, service, periodical, book, pamphlet, or other material whatsoever;

(b) Exhibit any sign, placard, banner, notice or other written material, except for activities as approved by Landlord;

(c) Distribute any circular, booklet, handbill, placard or other material, except for activities as approved by Landlord;

(d) Solicit membership in any organization, group or association or contribution for any purpose;

(e) Create a nuisance;

(f) Use any Common Area for any purpose when none of the other retail establishments within the Shopping Center is open for business or employment, except for activities as approved by Landlord;

(g) Throw, discard, or deposit any paper, glass or extraneous matter of any kind except in designated receptacles, or create litter or hazards of any kind;

(h) Deface, damage or demolish any sign, light standard or fixture, landscaping materials or other improvements within the Shopping Center, or the property of customers, business invitees, or employees situated within the Shopping Center.

-45-

## CURRENT EXCLUSIVE AND PROHIBITED USED IN LEASES OF OTHER TENANTS

### OFFICE DEPOT EXCLUSIVE AND PROHIBITED USES

2. <u>RESTRICTIONS THROUGHOUT THE LEASE TERM</u>: All those prohibited uses set forth in paragraph B.2 hereinbelow.

B. <u>PROHIBITED USES (restrictions upon the use of the rest of the Shopping Center)</u>: Subject to the rights of certain Occupants of the Shopping Center as provided below, the following restrictions shall apply to the use and occupancy of the Shopping Center:

1.     Landlord shall not permit any other tenant or occupant of the Shopping Center, other than Tenant, to: (i) use more than the lesser of ten percent (10%) of its floor area, or one thousand (1,000) square feet of floor area (in the aggregate), for the sale, leasing, distribution or display of office or school supplies, office furniture, machines and other office or school related equipment, computers, computer hardware, software and related equipment; cellular telephones and telecommunications equipment and related devices (including personal digital assistance ["PDA"] and the like); art, architectural and engineering supplies; or "copy/print services" (as hereinafter defined) or (ii) be primarily engaged in the sale, leasing, distribution or display of any of the items set forth in (i) above. Should Landlord (or a related entity or affiliate of Landlord which has a controlling interest) currently lease, own or subsequently acquire any real property adjacent to or within one (1) mile of the Shopping Center, Landlord shall not thereafter lease or convey any portion of such real property to any party for a competing use in violation of Tenant's exclusive set forth in this paragraph. The foregoing sentence shall not prevent Landlord from acquiring property at which there is an existing tenant with a lease allowing a competing use in violation of Tenant's exclusive at the time of Landlord's acquisition of such property. "Copy/print services" is herein defined as a facility or center (whether in-store or free standing) providing any one or more of the following products and/or services: (a) photocopying and facsimile and printing services, such as reproduction and printing services including full, self, coin and color copying, graphic design, desktop publishing, scanning, faxing and imaging services and binding, collating and finishing of documents; (b) mail services, including mail receiving services, mailbox rental or mailing; or (c) shipping, labeling and packaging services.

2.     No portion of the Shopping Center shall be used or occupied for any of the following purposes: theater; movie theater, auditorium, meeting hall, library or reading room or other place of assembly; automobile sales or repairs; bowling alley, pool hall or skating rink; bar serving alcoholic beverages (except as an incident to a full kitchen restaurant operation); funeral parlor; massage parlor; hotel or lodging facilities; gun range; off track betting establishment (except incidental sales of state lottery tickets); a so-called "flea market" or other operation selling used goods (except excluding antiques, estate merchandise, "upscale merchandise" or consignment merchandise); any business or use which emits offensive odors, fumes, dust or vapor, or constitutes a public or private nuisance, or emits loud noise or sounds which are objectionable, or which creates a fire, explosive or other hazard; manufacturing facility; warehouse (except incidental to a retail operation); adult book store or similar store selling or exhibiting pornographic materials as a substantial part of its business; or night club, discotheque or dance hall.

3.     The following shall be prohibited at any location in the Shopping Center within four hundred feet (400') of the closest demising wall of the Premises: any sports or entertainment facility (including, without limitation, a gymnasium, health club, racquet club, physical fitness facility); or car wash.

-46-

4.    The following shall be prohibited at any location in the Shopping Center within one hundred feet (100') of the closest demising wall of the Premises (including those inline tenant spaces located to the North of the Premises but South of the "18' Courtyard" shown on **EXHIBIT B**): restaurant; amusement center, arcade, virtual reality, laser tag or game room; or school (including, without limitation, trade school or class sessions, but excepting incidental customer training in the use of computer hardware or software sold by Tenant or by any other Occupant of the Shopping Center permitted to engage in such sales). Notwithstanding the foregoing, one (1) restaurant measuring not more than one thousand six hundred (1,600) square feet may be located within such restricted area.

5.    Landlord covenants and agrees that no portion of the Shopping Center shall be used for offices excepting (i) offices incidental to retail uses, and (ii) offices providing services to the general public and customarily found in similar shopping centers (e.g., banking for finance services, real estate or securities brokerage services, financial or tax planning services, accounting, insurance or legal services, optical, medical or dental services or travel agencies).

6.    The Prohibited Uses set forth above shall be subject to the rights of Occupants under leases in effect as of the Effective Date of this Lease for as long as such lease(s) remains in effect without any expansion or relocation, provided such leases do not require the corresponding tenants to be bound by the Prohibited Uses set forth in this Exhibit E.


WALGREENS EXCLUSIVE AND PROHIBITED USES


8.    (a)    Landlord covenants and agrees that, during the Term and any extensions or renewals thereof, no additional property which Landlord, directly or indirectly, may now or hereafter own or control, and which is contiguous to, or which is within five hundred (500) feet of any boundary of, the Leased Premises (the "Landlord's Property"), will be used for any one or combination of the following: (i) the operation of a drug store or a so-called prescription pharmacy or for any other purpose requiring a qualified pharmacist or other person authorized by law to dispense medicinal drugs, directly or indirectly, for a fee or remuneration of any kind; (ii) the operation of a medical diagnostic lab or the provision of treatment services (other than as part of a medical, dental, physician, surgical or chiropractic office[s], which office[s] shall not be restricted by this subsection [ii]); and (iii) the operation of a business in which one hour photofinishing services are offered for sale. In the event that Tenant files suit against any party to enforce the foregoing restrictions, Landlord agrees to cooperate fully with Tenant in the prosecution of any such suit, and reimburse Tenant for all of attorneys' fees and court costs incurred by Tenant in connection with such suit, notwithstanding its resolution. For purposes hereof "contiguous" shall mean property that is either adjoining the Leased Premises or separated from the Leased Premises only by a public or private street, alley or right-of-way.


-47-

(b)     In addition, Landlord shall not permit or suffer any other occupant of Landlord's Property to use any premises or any portion thereof for purposes of a cocktail lounge, bar, disco, bowling alley, pool hall, billiard parlor, skating rink, roller rink, amusement arcade, children's play or party facility, adult book store, adult theatre, adult amusement facility, any facility selling or displaying pornographic materials or having such displays, second hand store, auction house, flea market, educational or training facility, blood bank, sleeping quarters or lodging, the outdoor housing or raising of animals, the sale, leasing or storage of automobiles, boats or other vehicles, any industrial use, a car wash, an assembly hall, off track betting establishment, bingo parlor, any use involving the use, storage, disposal or handling of Hazardous Substances or underground storage tanks, any office use (except incidental to a retail use), or any use which creates a nuisance. Landlord may permit the operation of a restaurant on Landlord's Property on the condition that the parking requirements for any such restaurant are satisfied solely by means of parking areas on Landlord's Property other than the Leased Premises (i.e., "self sufficient" restaurant parking).


CHINESE RESTAURANT EXCLUSIVE USE

### 23.   EXCLUSIVE USE.

During the term of this Lease, Landlord shall not enter into a lease with another tenant at Grandview Plaza whose principal business involves the selling of Thai, Asian, or Chinese Cuisine.


CHIROPRACTOR'S OFFICE EXCLUSIVE USE

For so long as this Lease is in full force and effect and Tenant has performed all of its obligations and covenants hereunder, Landlord's leases of other space in the Shopping Center shall not allow any other tenant to operate a chiropractor's office.


ROLY POLY SANDWICH EXCLUSIVE USE

For so long as this Lease is in full force and effect and Tenant has performed all of its obligations and covenants hereunder, Landlord's leases of other space in the Shopping Center shall not allow any other tenant to sell or manufacture for sale a menu that consists of more than ten percent (10%) rolled sandwiches or sandwiches made by using tortillas as an encasing ingredient.  This paragraph shall not apply to any tenant using its space as a restaurant serving primarily Mexican food.  This paragraph shall also not apply to the store spaces in the Shopping Center currently leased to Office Depot or Walgreens.

— 48 —

# DAIRY QUEEN EXCLUSIVE USE

**19.  Prohibited Use.** Except for leases in effect as of the date of this Offer, or parcels previously sold or under contract for sale as of the date of this Offer, Seller agrees not to lease and/or sell to any other party any other parcels in Seller's Grandview Plaza I development for the operation of a business in which the primary products are the retail sale of ice cream and/or custard products or hamburgers. Buyer's intended use of the Property is an International Dairy Queen franchised "Grill & Chill". Seller agrees to cause a restrictive covenant to be recorded on all Grandview Plaza I parcels, not excepted above, so that any business located and conducted on such parcels shall be restricted from operating a business in which the primary products are the retail sale of ice cream and/or custard products or hamburgers. Such deed restriction shall further provide that the same shall terminate upon the earlier to occur of: (i) the 25th anniversary of the date of closing or (ii) the Property ceases to be used as a Dairy Queen Grill & Chill.

# ADVANCE AMERICA EXCLUSIVE USE

2.  **Tenant's Exclusive Use:** Landlord covenants and agrees that, for so long as the Lease is in effect, Landlord shall not lease to, rent or permit any of the other stores in the Center to engage in the business of check cashing or advancing or loaning money using a personal check as prepayment of the loan or as a security interest. In the event of a breach of this restriction by Landlord, Tenant shall not be required to pay any further rent to Landlord under the Lease for the duration of such a breach, and Tenant shall have the option, in addition to any other remedies available at law or in equity, to enforce this covenant by injunctive relief or to terminate the Lease upon thirty (30) days written notice to Landlord. Notwithstanding the foregoing, this Section shall not apply to (i) any tenant in the Center that occupies more than ten thousand (10,000) square feet of floor space in the Center, or (ii) any federally insured bank or savings and loan.

# THE EXTREME PITA EXCLUSIVE USE

For so long as this Lease is in full force and effect and Tenant has performed all of its obligations and covenants hereunder, Landlord's leases of other space in the Shopping Center shall not allow any other tenant to sell or manufacture for sale a menu that consists of more than fifteen percent (15%) pita sandwiches or sandwiches made by using pitas as the encasing ingredient. This paragraph shall not apply to the store spaces in the Shopping Center currently leased to Office Depot or Walgreens.

-49-

## ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE, dated April 21, 2004, is entered into by and between Grandview Plaza I, LLC ("Landlord"), and MLR Enterprises, Inc. ("Tenant")

### RECITALS:

A.    The parties hereto have entered into a certain Lease Agreement, dated April 21 2004, and pertaining to the premises ("Premises") located at the southwest corner of Grandview Boulevard and Silvernail Road, Waukesha, Wisconsin   (the "Lease").

B.    Landlord acknowledges that Tenant   intends to operate an Extreme Pita franchise from the Premises pursuant to a Franchise Agreement (the "Franchise Agreement") with The Extreme Pita Franchising USA, Inc.   ("Franchisor") under the name Extreme Pita or other name designated by Franchisor ("Franchised Business").

C.    The parties now desire to amend the Lease in accordance with the terms and conditions contained herein.

### AGREEMENT:

NOW, THEREFORE, it is hereby mutually covenanted and agreed between Landlord and Tenant as follows:

1.  Remodeling and Decor.    Subject to Tenant obtaining any required municipal approvals and to Tenant's compliance with the provisions of Section 21 of the Lease, Landlord agrees that Tenant shall have the right to remodel, equip, paint and decorate the interior of the Premises and to display such proprietary marks and signs on the interior and exterior of the Premises as Tenant is reasonably required to do pursuant to the Franchise Agreement and any successor Franchise Agreement under which Tenant may operate a Franchised Business on the Premises.

2.  Assignment.    Tenant shall have the right to assign all of its right, title and interest in the Lease to Franchisor or its parent, affiliate and/or subsidiary corporation at any time during the term of the Lease, including any extensions or renewals thereof, without first obtaining Landlord's consent.    However, no assignment shall be effective until such time as Franchisor, its parent or its designated affiliate or subsidiary gives Landlord written notice of its acceptance of such assignment, and nothing contained herein or in any other document shall constitute Franchisor, its parent or its designated affiliate or subsidiary a party to the Lease, or guarantor thereof, and shall not create any liability or obligation of Franchisor or its parent unless and until the Lease is assigned to, and accepted in writing by, Franchisor or its parent.    In the event of any assignment, Tenant shall remain liable under the terms of the Lease. Franchisor shall have the right to reassign the Lease to another franchisee without the Landlord's consent in accordance with the provisions of this Section 2 and Section 4(a) of this Addendum.

3.  Default and Notice.

    (a)  In the event there is a default or violation by Tenant under the terms of the Lease, Landlord shall give Tenant and Franchisor written notice of such default or violation within a reasonable time after Landlord receives knowledge of its occurrence.    If Landlord gives Tenant a default notice, Landlord shall contemporaneously give Franchisor a copy of such of notice. Franchisor will notify Landlord whether it intends to

EXHIBIT A, p. 46

cure the default and take an automatic assignment of Tenant's interest
as provided in Paragraph 4(a). Franchisor will have an additional
fifteen (15) days from the expiration of Tenant's cure period in which it
may exercise the option, but it is not obligated, to cure the default or
violation.

(b)   All notices to Franchisor shall be sent by registered or certified mail,
postage prepaid, to the following address:

> The Extreme Pita Franchising USA, Inc.
> c/o 2191B Dunwin Drive
> Mississauga, Ontario
> L5L 1X2
> Attention:   Legal Department
> e-mail address: markr@extremepita.com

> and a copy to:

> Davis & Company
> 1 First Canadian Place, Suite 5300
> 100 King Street West
> Toronto, Ontario M5X1E2
> Canada
> Attention:   Joseph Adler
> e-mail address: dadler@davis.ca

> and a copy to:

> Kevin P. Hein, Esq.
> Snell & Wilmer LLP
> 1200 Seventeenth Street, Suite 1900
> Denver, CO 80202
> USA
> e-mail address: khein@swlaw.com

Franchisor may change its address for receiving notices by giving
Landlord written notice of such new address.  Landlord agrees that it
will notify both Tenant and Franchisor of any change in Landlord's
mailing address to which notices should be sent.

Following Franchisor's approval of such Lease, Tenant agrees not to
terminate, or in any way alter or amend the same during the Term of the
Franchise Agreement or any renewal thereof without Franchisor's prior
written consent, and any attempted termination, alteration or amendment
shall be null and void and have no effect as to Franchisor's interests
thereunder; and a clause to such effect shall be included in such lease.


4.  Termination or Expiration.

(a)   Upon Tenant's default and failure to cure a default under either the
Lease or the Franchise Agreement, Franchisor or its parent, affiliate
and/or subsidiary corporation will, at its option, exercisable within
fifteen (15) days after the expiration of Franchisor's cure period in
Section 3(a) of this Addendum to Lease, but only if Franchisor has cured
the default within such time period (time being of the essence as to
both the cure period and the exercise period), have the right (but not
the obligation) to take an automatic assignment of Tenant's interest

2

EXHIBIT A, p. 47

herein and at any time thereafter to re-assign the Lease to a new franchisee without Landlord's consent.

(b) Upon Franchisor's acceptance of an assignment of Tenant's interest in the Lease,, Landlord will, at no cost to Landlord, cooperate with and assist Franchisor in securing possession of the Premises and if Franchisor or its parent, affiliate and/or subsidiary corporation does not elect to take an assignment of the Tenant's interest, Landlord will allow Franchisor to enter the Premises, without being guilty of trespass and without incurring any liability to Landlord, to remove all signs, awnings, and all other items identifying the Premises as a Franchised Business and to make such other modifications (such as repainting) as are reasonably necessary to protect the Extreme Pita marks and system, and to distinguish the Premises from a Franchised Business. In the event Franchisor exercises its option to purchase assets of Tenant, Landlord shall permit Franchisor to remove all such assets being purchased by Franchisor; provided that Franchisor will repair all damage to the Premises caused by such removal.

5. Consideration; No Liability.

(a) Landlord hereby acknowledges that the provisions of this Addendum to Lease are required pursuant to the Franchise Agreement under which Tenant plans to operate its business and the Tenant would not lease the Premises without this Addendum.

(b) Landlord further acknowledges that Tenant is not an agent or employee of Franchisor and the Tenant has no authority or power to act for, or to create any liability on behalf of, or to in any way bind Franchisor or any affiliate or subsidiary of Franchisor, and that Landlord has entered into this Addendum to Lease with full understanding that it creates no duties, obligations or liabilities of or against Franchisor or any affiliate or subsidiary of Franchisor, unless and until Franchisor or its affiliate or subsidiary accepts an assignment of this Lease.

6. Sales Reports. If requested by Franchisor, Landlord will provide Franchisor with whatever information Landlord has regarding Tenant's sales from its Franchised Business.

7. Amendments. No amendment or variation of the terms of the Lease or this Addendum to Lease shall be valid unless made in writing and signed by the parties hereto.

8. Reaffirmation of Lease. Except as amended or modified herein, all of the terms, conditions and covenants of the Lease shall remain in full force and effect and are incorporated herein by reference and made a part of this Agreement as though copies were attached herein in full.

9. Beneficiary. Landlord and Tenant expressly agree that Franchisor is a third party beneficiary of this Addendum.

[Signatures of the parties appear on the following page.]

3

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto as of
the day, month and year first written above.


LANDLORD:                              TENANT:

Grandview Plaza I, LLC                 MLR Enterprises, Inc.
By: Redmond Ventures, A Wisconsin Limited
    Partnership,
    Its administrative member,
    By:  Redmond Ventures, Inc.,       By: _____
         its sole general partner          Michael Rankin, President

        By: _____
            ~~Brian Cummings, Vice~~ President
            Mark D. Redmond


                                    4

# GUARANTY OF LEASE

Guaranty of Lease dated the ____ day of April, 2004, by and between Grandview Plaza I, LLC as "Landlord" and MLR Enterprises, Inc. as "Tenant" for approximately 1,600 square feet of Floor Area (as defined in the Lease), designated as store space 1830E, in Landlord's Shopping Center in Waukesha, Wisconsin, as outlined on the site plan attached as Exhibit B to the Lease ("Premises").

## RECITALS

A.   At the instance and request of the undersigned, Michael Rankin and Linda Rankin, Landlord entered into the Lease with Tenant and;

B.   Part of the consideration for the renting of the Premises is the undersigned's covenant to guarantee the payment of rentals provided for in the Lease and the performance of all other provisions of the Lease;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and of the leasing of the Premises to Tenant and for other valuable consideration, receipt of which is hereby acknowledged, the undersigned, Michael Rankin and Linda Rankin, hereinafter jointly referred to as "Guarantor", hereby unconditionally, jointly and severally guarantee to Landlord and to its successors and assigns, the prompt payment by Tenant of the rents reserved in said Lease, and the performance by Tenant of all the provisions and covenants contained in said Lease for and during the original term of said Lease; and if any default shall be made by Tenant, the undersigned Guarantor shall pay to Landlord, their successors or assigns, such sum or sums of money as will be sufficient to make up any such deficiency, and shall satisfy the provisions and covenants by Tenant to be performed. (For clarification, this Guaranty shall apply only to the original term of said Lease and shall not apply to any extension term or renewals of the Lease.)

The amount of this guaranty, other than of expenses (including reasonable attorneys' fees) incurred by Landlord in enforcing this Guaranty, shall be limited to all rent, additional rent and other charges and expenses due from Tenant to Landlord for the twelve (12) month period following any default by Tenant under the Lease.

Until such time as all of Tenant's obligations under the Lease are completely satisfied and performed, the undersigned Guarantor shall have no right of subrogation against Tenant for any payments or performance of obligations under the Lease made or undertaken by the undersigned Guarantor pursuant to this Guaranty.

EXHIBIT B, P. 1



Guarantor does hereby further covenant and agree to pay all of Landlord's, its successors or assigns, expenses, including reasonable attorneys' fees, incurred in enforcing this Guaranty.

IN WITNESS WHEREOF, Guarantor has this ___ day of April, 2004, caused this Guaranty to be executed by their hand and seal.

_____
Michael Rankin

_____
Linda Rankin

STATE OF WISCONSIN)
                  ) ss.
COUNTY OF WAUKESHA)

Personally came before me this 23 day of April, 2004, Michael Rankin, to me known to be the person who executed the foregoing instrument, and acknowledged that he executed the foregoing Guaranty.

_____
Helen T. O'Keefe
(Print Name)
Notary Public, State of Wisconsin
My Commission expires: 8/29/04

STATE OF WISCONSIN)
                  ) ss.
COUNTY OF WAUKESHA)

Personally came before me this 23 day of April, 2004, Linda Rankin, to me known to be the person who executed the foregoing instrument, and acknowledged that she executed the foregoing Guaranty.

_____
Helen T. O'Keefe
(Print Name)
Notary Public, State of Wisconsin
My Commission expires: 8/29/04

EXHIBIT B, p. 2

## Assignment of Lease

This agreement is made by and between MLR Enterprises d.b.a. The Extreme Pita and Two Sandwich Kings, LLC dated February 2nd, 2006.

WHEREAS, MLR Enterprises assigns all rights and obligations to Two Sandwich Kings, LLC for their original lease dated April 27th, 2004 by and between MLR Enterprises and Grandview Plaza I, LLC (Landlord) for the retail location at 1830E Meadow Lane, Waukesha, WI 53186

In consideration of the assignment of the lease, Two Sandwich Kings, LLC agrees to pay $12,500.00 by certified check to MLR Enterprises for MLR Enterprises interest in said lease.

Agreed to this second day of February 2006.

_____  2/2/06

Michael J. Rankin for MLR Enterprises

_____

Linda J. Rankin for MLR Enterprises

_____

William J. Foley
Agent
Two Sandwich Kings, LLC

EXHIBIT C, P. 1

EXHIBIT
C

search        calendar        pay fees online        reports        help        view cart (0 items)

# Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al

Printable Version (PDF)

## Waukesha County Case Number 2009SC000880

### Court Record Events

What is RSS? RSS

| | Date | Event | Court Official | Court Reporter |
|---|---|---|---|---|
| 1 | 09-25-2012 | Records scanned | | |
| 2 | 03-23-2012 | File destroyed | | |
| 3 | 03-13-2012 | Records scanned | | |
| 4 | 03-17-2009 | Other | Georgeson, Linda | |
| 5 | 03-17-2009 | Order for dismissal | Pieper, Thomas J. | |

**Additional Text:**
due to filing of bankruptcy... signed by Court Commissioner Thomas J. Pieper on 3/16/09.

| 6 | 02-23-2009 | Appearance | Georgeson, Linda | Electronic Court Recording |
| 7 | 02-23-2009 | Eviction return date | Georgeson, Linda | |

**Additional Text:**
Defendant Michael Rankin in court. Attorney Dino Antonopoulos in court for Plaintiff Grandview Plaza I LLC. Plaintiff Grandview Plaza I LLC not in court. Defendant Two Sandwich Kings LLC not in court. Defendant MLR Enterprises Inc. in court by Michael Rankin. Defendant Linda Rankin in court by Michael Rankin. Second cause is adjourned day to day. ECR 8:48. Mr. Rankin has been out of the space since February 2006. Cause is moot as to Mr. and Mrs. Rankin and MLR Enterprises Inc. Plaintiff states Two Sandwich Kings is in bankruptcy.

| 8 | 02-19-2009 | Affidavit of service | | |

**Additional Text:**
served on the 11th day of February, 2009 @9:20pm as to Michael Rankin

| 9 | 02-19-2009 | Affidavit of service | | |

**Additional Text:**
Service made of Authenticated Summons and Complaint on Linda Rankin and MLR Enterprises.

| 10 | 02-16-2009 | Notice | | |

**Additional Text:**
Chapter 11 Bankruptcy Case Filing as to Two Sandwich Kings, LLC...filed by U.S. Banruptcy Court, rc'd on 2/11/09.

| 11 | 02-11-2009 | Affidavit of service | | |

**Additional Text:**
filed on Two Sandwich Kings LLC

| 12 | 02-11-2009 | Summons and complaint | | |

Printable Version (PDF)

Return to Case 2009SC000880

Technical problems? Contact us.          notice to employers | accuracy | public records on the internet | information on other sites | data extraction option | rss | court terms

EXHIBIT D, p. 1

Case 15-02159-svk      Doc 1      Filed 04/01/15      Page 64 of 106

http://wcca.wicourts.gov/courtRecordEvents.xsl;jsessionid=151BA4B1D40C185315E8DAC0530F1C0C.render6?caseNo=2009SC000880&countyNo=67&cachel...          1/2

EXHIBIT D, p. 2

Case 15-02159-svk     Doc 1     Filed 04/01/15     Page 65 of 106

search     calendar     pay fees online     reports     help     view cart (0 items)

# Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al

Printable Version (PDF)

# Waukesha County Case Number 2009SC000880

What is RSS?

| Filing Date | Case Type | Case Status | Court Record Events |
|---|---|---|---|
| 02-11-2009 | Small Claims | Closed | ○ Ascending Date Order |
| Class Code Description | Responsible Official | | ● Descending Date Order |
| Small Claims, Eviction | Georgeson, Linda | | |

## Parties

| Party Type | Party Name | Party Status |
|---|---|---|
| Plaintiff | Grandview Plaza I LLC | |
| Defendant | Two Sandwich Kings LLC | |
| Defendant | MLR Enterprises Inc. | |
| Defendant | Rankin, Michael | |
| Defendant | Rankin, Linda | |

## Civil Judgment(s)

| Type | Debtor Name | Multiple Debtors | Amount |
|---|---|---|---|
| Judgment for eviction | MLR Enterprises Inc. | No | $ 0.00 |

## Party Details

Grandview Plaza I LLC - Plaintiff

Date of Birth            Sex         Race [1]

Address                         Address Updated On
N16 W23377 Stone Ridge Drive, Waukesha, WI 53188     02-11-2009

Party Attorney(s)
Attorney Name    GAL Entered
Antonopoulos, Dino   No    02-11-2009

Two Sandwich Kings LLC - Defendant

Date of Birth            Sex         Race [1]

Address                         Address Updated On
1830 Meadow Lane Suite E, Waukesha, WI 53186     02-11-2009

MLR Enterprises Inc. - Defendant

Date of Birth            Sex         Race [1]

Address                         Address Updated On
N8102 River Valley Road, Ixonia, WI 53036     02-11-2009

Rankin, Michael - Defendant

Date of Birth            Sex         Race [1]

Address                         Address Updated On
N8102 River Valley Road, Ixonia, WI 53036     02-11-2009

Rankin, Linda - Defendant

EXHIBIT D, p. 3

| Date of Birth | | Sex | Race [1] |
|---|---|---|---|

Address
N8102 River Valley Road, Ixonia, WI 53036

Address Updated On
02-11-2009

---

What is RSS?  RSS

**Judgment for eviction**

| County | Case Number | Case Caption |
|---|---|---|
| Waukesha | 2009SC000880 | Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al |
| Judgment/Lien Date | Total Amount | Warrant Number |
| 02-23-2009 | $ 0.00 | |
| Date and Time Docketed | Service/Event Date | |

Type Of Tax

Property/Remarks

N8102 River Valley Road
Ixonia, WI 53036

**Judgment Parties**

| Party Type | Name | Dismissed | Status | Address | | Attorney Name |
|---|---|---|---|---|---|---|
| Creditor | Grandview Plaza I LLC | No | Active | N16 W23377 Stone Ridge Drive, Waukesha, WI 53188 | | Antonopoulos, Dino |
| Debtor | MLR Enterprises Inc. | No | Active | N8102 River Valley Road, Ixonia, WI 53036 | | |

[1] The designation listed in the Race field is subjective. It is provided to the court by the agency that filed the case.

[2] Non-Court activities do not require personal court appearances. For questions regarding which court type activities require court appearances, please contact the Clerk of Circuit Court in the county where the case originated.

Previous   Return to List   Next

Printable Version (PDF)

---

EXHIBIT D, p. 4

search      calendar      pay fees online      reports      help      view cart  (0 items)

# Grandview Plaza, LLC vs. Two Sandwich Kings, LLC et al

Printable Version (PDF)

# Waukesha County Case Number 2009SC003065

What is RSS? **RSS**

| Filing Date | Case Type | Case Status | Court Record Events |
|---|---|---|---|
| 06-01-2009 | Small Claims | Closed | ○ Ascending Date Order |
| Class Code Description | Responsible Official | | ◉ Descending Date Order |
| Small Claims, Eviction | Georgeson, Linda | | |

## Parties

| Party Type | Party Name | Party Status |
|---|---|---|
| Plaintiff | Grandview Plaza, LLC | |
| Defendant | Two Sandwich Kings, LLC | |
| Defendant | MLR Enterprises, Inc. | |
| Defendant | Rankin, Michael | |
| Defendant | Rankin, Linda | |

## Civil Judgment(s)

| Type | Debtor Name | Multiple Debtors | Amount |
|---|---|---|---|
| Judgment for eviction | MLR Enterprises, Inc. | Yes | $ 0.00 |

## Party Details

**Grandview Plaza, LLC - Plaintiff**

| Date of Birth | Sex | Race [1] |
|---|---|---|

Address
N16 W23377 Stone Ridge Drive, Waukesha, WI 53188

Address Updated On
06-01-2009

Party Attorney(s)

| Attorney Name | GAL | Entered |
|---|---|---|
| Andringa, Timothy J | No | 06-01-2009 |

**Two Sandwich Kings, LLC - Defendant**

| Date of Birth | Sex | Race [1] |
|---|---|---|

Address
1830 Meadow Lane, Suite E, Waukesha, WI 53186

Address Updated On
06-01-2009

**MLR Enterprises, Inc. - Defendant**

| Date of Birth | Sex | Race [1] |
|---|---|---|

Address
N8102 River Valley Road, Ixonia, WI 53036

Address Updated On
06-01-2009

**Rankin, Michael - Defendant**

| Date of Birth | Sex | Race [1] |
|---|---|---|

Address
W359 N5685 Surrey Dr., Oconomowoc, WI 53066

Address Updated On
08-03-2009

**Rankin, Linda - Defendant**

EXHIBIT E, p. 1

Date of Birth

Sex                        Race [1]

Address
W359 N5685 Surrey Dr., Oconomowoc, WI 53066

Address Updated On
08-03-2009

What is RSS?  RSS

**Judgment for eviction**

| County | Case Number | Case Caption |
|---|---|---|
| Waukesha | 2009SC003065 | Grandview Plaza, LLC vs. Two Sandwich Kings, LLC et al |
| Judgment/Lien Date | Total Amount | Warrant Number |
| 06-29-2009 | $ 0.00 | |
| Date and Time Docketed | Service/Event Date | |

Type Of Tax

Property/Remarks
1830 Meadow Lane, Suite E
Waukesha, WI 53186

Civil Judgment Events

| Date | Type | Amount |
|---|---|---|
| 06-29-2009 | Writ of restitution | $ 0.00 |

Judgment Parties

| Party Type | Name | Dismissed | Status | Address | Attorney Name |
|---|---|---|---|---|---|
| Creditor | Grandview Plaza, LLC | No | Active | N16 W23377 Stone Ridge Drive, Waukesha, WI 53188 | Andringa, Timothy J |
| Debtor | MLR Enterprises, Inc. | No | Active | N8102 River Valley Road, Ixonia, WI 53036 | |
| Debtor | Rankin, Linda | No | Active | W359 N5685 Surrey Dr., Oconomowoc, WI 53066 | |
| Debtor | Rankin, Michael | No | Active | W359 N5685 Surrey Dr., Oconomowoc, WI 53066 | |
| Debtor | Two Sandwich Kings, LLC | No | Active | 1830 Meadow Lane, Suite E, Waukesha, WI 53186 | |

[1] The designation listed in the Race field is subjective. It is provided to the court by the agency that filed the case.

[2] Non-Court activities do not require personal court appearances. For questions regarding which court type activities require court appearances, please contact the Clerk of Circuit Court in the county where the case originated.

Previous   Return to List   Next

Printable Version (PDF)

EXHIBIT E, p. 2

search      calendar      pay fees online      reports      help      view cart (0 items)

# Grandview Plaza, LLC vs. Two Sandwich Kings, LLC et al

Printable Version (PDF)

## Waukesha County Case Number 2009SC003065

### Court Record Events

What is RSS? [RSS]

| | Date | Event | | Court Official | Court Reporter |
|---|---|---|---|---|---|
| 1 | 06-01-2012 | File destroyed | | | |
| 2 | 05-21-2012 | Records scanned | | | |
| 3 | 08-18-2009 | Other | | Georgeson, Linda | |
| | | Additional Text: | | | |
| | | dismissed - no damage letter filed. | | | |
| 4 | 08-17-2009 | Motion hearing | | Georgeson, Linda | Electronic Court Recording |
| | | Additional Text: | | | |
| | | Plaintiff Grandview Plaza, LLC and Attorney Timothy J Andringa not in court. Defendant MLR Enterprises, Inc. not in court. Defendant Linda Rankin not in court. Defendant Michael Rankin not in court. Defendant Two Sandwich Kings, LLC not in court. No appearances. Case called for second cause. Court dismisses second cause. ECR 9:23 a.m. | | | |
| 5 | 08-03-2009 | Change of address notification | | | |
| | | Event Party | | | |
| | | Rankin, Michael | | | |
| | | Additional Text: | | | |
| | | ADDRESS INFO for Michael Rankin Current: W359 N5685 Surrey Dr., Oconomowoc, WI 53066 United States (Effective: 08-03-2009) Prior: N8102 River Valley Road, Ixonia, WI 53036 United States | | | |
| 6 | 08-03-2009 | Change of address notification | | | |
| | | Event Party | | | |
| | | Rankin, Linda | | | |
| | | Additional Text: | | | |
| | | ADDRESS INFO for Linda Rankin Current: W359 N5685 Surrey Dr., Oconomowoc, WI 53066 United States (Effective: 08-03-2009) Prior: N8102 River Valley Road, Ixonia, WI 53036 United States | | | |
| 7 | 08-03-2009 | Return of unclaimed/undelivered mail service | | | |
| | | Additional Text: | | | |
| | | of Notice of Hearing, for Dismissal Calendar, for defendants Michael and Linda Rankin. Moved, forward time expired. Court will update and remail notices. | | | |
| 8 | 07-30-2009 | Notice of hearing | | | |
| | | Additional Text: | | | |
| | | Dismissal calendar on August 17, 2009 at 09:00 am. | | | |
| 9 | 06-29-2009 | Affidavit of non-military service | | | |
| | | Additional Text: | | | |
| | | filed. | | | |
| 10 | 06-29-2009 | Appearance | | Georgeson, Linda | |
| 11 | 06-29-2009 | Writ of restitution | | | |
| | | Additional Text: | | | |
| | | Issued on all defendants. Atty Andringa appeared in person. | | | |
| 12 | 06-29-2009 | Eviction return date | | Georgeson, Linda | Electronic Court Recording |

Additional Text:
Second cause is adjourned day to day. Affidavit of non-military to be filed with the court.

---

13  06-17-2009      Affidavit of service
Additional Text:
Service made of Authenticated Summons and Complaint on Two Sandwich Kings on 6/9/09; filed with cover letter.

---

14  06-12-2009      Affidavit of service
Additional Text:
Service made of Authenticated Summons and Complaint on Linda Rankin on 6/4/09. (cover letter)

---

15  06-11-2009      Affidavit of service
Additional Text:
Service made of Eviction Summons and Complaint on MLR Enterprises Inc. An Affidavit of Personal Service was also filed for Michael Rankin (cover letter)

---

16  06-01-2009      Summons and complaint

---

Printable Version (PDF)

Return to Case 2009SC003065

Technical problems? Contact us.        notice to employers | accuracy | public records on the internet | information on other sites | data extraction option | rss | court terms

EXHIBIT E, p. 4

## AMENDMENT TO LEASE

This Amendment to Lease ("Amendment") is made and entered by and between Grandview Plaza I, LLC ("Landlord") and Two Sandwich Kings, LLC ("Tenant") as of the _10th_ day of July, 2009.

## RECITALS

A.     Landlord and MLR Enterprises entered into a lease dated April 27, 2004 pertaining to the lease of approximately 1,600 square feet more commonly known as 1830E Meadow Lane, Waukesha, Wisconsin ("Lease") in a building owned by Landlord as more particularly described in the Lease.

B.     MLR Enterprises assigned the Lease to Tenant on February 2, 2006.

C.     Tenant has failed to pay rent on a timely basis and through July 6, 2009, Tenant owes Landlord $17,351.21 in past due rent, additional rent and other charges ("Past Due Amount").

D.     Landlord obtained an eviction and Writ of Restitution against Tenant on June 29, 2009 pursuant to Waukesha County Court Case Number 2009SC3065.

E.     Landlord and Tenant desire to amend the Lease to provide for the payment of the outstanding Past Due Amount.

## AMENDMENT

NOW, THEREFORE, the parties agree to amend the Lease as follows:

1.     Landlord and Tenant acknowledge that the Lease Term currently expires on September 30, 2009 but the parties agree that the Lease Term shall be extended for the first 5-year extension, as provided for in the Lease, commencing on October 1, 2009 and ending on September 30, 2014. Tenant shall pay Rent and Additional Rent for this extension period as set forth in the Lease.

2.     Commencing on August 1, 2009, Tenant shall pay Landlord the Rent and Additional Rent required by the Lease plus an amount that is at least $1,000 ("Extra Payment") in addition to the Rents.  The Extra Payment shall be applied to the Past Due Amount and shall be made by Tenant until the Past Due Amount is paid in full.  The recitation of the Past Due Amount herein shall in no way limit nor preclude Landlord from assessing Tenant any charges allowed under the Lease for Tenant's failure to timely pay Rent and Additional Rent subsequent to the date of this Amendment.  In the event that Tenant subsequently defaults under the Lease for failure to make required payments, Landlord may reinstate and assess late charges on payments Tenant failed to make prior to the date of this Amendment.

EXHIBIT F, p. 1

EXHIBIT
XXXXXXXXXXXXXX
XXXXXXXXXXXXXX
XXXXXXXXXXXXXX

3.     William J. Foley shall sign and deliver the Guaranty, attached hereto as **Exhibit A** and incorporated herein and into the Lease, to Landlord no later than July 10, 2009.

4.     Except as modified herein, the Lease is ratified and confirmed in all respects.  In the event of any conflict between the terms and conditions of this Amendment and the Lease, the terms and provisions of this Amendment shall control.  This Amendment may be signed in two or more counterparts. Any capitalized terms used in this Amendment that have not been defined herein shall be defined as provided in the Lease.

5.     This Amendment shall be binding upon Landlord only if accepted by Tenant on or before July 10, 2009 at 12:00 PM Central Time.

     **IN WITNESS WHEREOF**, the undersigned have executed this Amendment as of the date above written.

**Landlord:**                                    **Tenant:**

**Grandview Plaza I, LLC**                **Two Sandwich Kings, LLC**

By:_____        By:_____
     Frank Bielinski, Managing Member

EXHIBIT F, p. 2

## EXHIBIT A

To be attached to and made part of a Lease Agreement dated April 27, 2004, by and between Grandview Plaza I, LLC, Landlord, and MLR Enterprises as assigned on February 2, 2006 to Two Sandwich Kings, Tenant, as amended this second week of July, 2009.

GUARANTY

For value received and in consideration of the Landlord making the foregoing Lease and July, 2009 amendment thereto and in reliance upon this Guaranty, the undersigned hereby jointly and severally guarantees the payment of the rent and the performance of the covenants and agreements by the Tenant in the foregoing Lease covenanted and agreed, in the manner and form as in said Lease provided.

In Witness Whereof the undersigned has hereunto affixed his hand and seal this ___10th___ day of July, 2009.

GUARANTOR:

_____ (SEAL)
William J. Foley

EXHIBIT F, p. 3

| search | calendar | pay fees online | reports | help | view cart (0 items) |

# Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al

Printable Version (PDF)

# Waukesha County Case Number 2011SC001656

What is RSS? [RSS]

| Filing Date | Case Type | Case Status | Court Record Events |
|---|---|---|---|
| 03-25-2011 | Small Claims | Closed | ○ Ascending Date Order |
| Class Code Description | Responsible Official | | ◉ Descending Date Order |
| Small Claims, Eviction | Ramirez, Ralph M. | | |
| Branch Id | | | |
| 3 | | | |

## Parties

| Party Type | Party Name | Party Status |
|---|---|---|
| Plaintiff | Grandview Plaza I LLC | |
| Defendant | Two Sandwich Kings LLC | |
| Defendant | Foley, William J | |
| Defendant | Rankin, Michael J | |
| Defendant | Rankin, Linda J | |
| Garnishee | Sid Grinker Co., Inc. | |

## Civil Judgment(s)

| Type | Debtor Name | Multiple Debtors | Amount | Satisfaction | Judgment Status | Date |
|---|---|---|---|---|---|---|
| Judgment for eviction | Foley, William J | Yes | $ 0.00 | | | |
| Judgment for money | Foley, William J | Yes | $ 39,705.73 | No | | |
| Judgment for money | Rankin, Linda J | Yes | $ 31,618.38 | No | | |

## Party Details

Grandview Plaza I LLC - Plaintiff

| Date of Birth | | Sex | Race [1] |
|---|---|---|---|

Address
N16 W23377 Stone Ridge Drive, Waukesha, WI 53188

Party Attorney(s)

Address Updated On
03-25-2011

| Attorney Name | GAL Entered |
|---|---|
| Antonopoulos, Dino | No    03-25-2011 |

Two Sandwich Kings LLC - Defendant

| Date of Birth | | Sex | Race [1] |
|---|---|---|---|

Address
1830 Meadow Lane Suite E, Pewaukee, WI 53072

Party Attorney(s)

Address Updated On
03-25-2011

| Attorney Name | GAL Entered |
|---|---|
| Mcalister, James L | No    04-11-2011 |

Foley, William J - Defendant

Date of Birth        Sex     Race [1]

EXHIBIT G, p. 1

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 75 of 106

Address
515 N. Glenview Avenue #F, Milwaukee, WI 53213

Address Updated On
03-25-2011

Party Attorney(s)

| Attorney Name | GAL | Entered |
| --- | --- | --- |
| Mcalister, James L | No | 04-11-2011 |

Rankin, Michael J - Defendant

| Date of Birth | | Sex | | Race [1] |
| --- | --- | --- | --- | --- |

Address
W359 N5685 Surrey Dr, Oconomowoc, WI 53066

Address Updated On
05-23-2011

Rankin, Linda J - Defendant

| Date of Birth | | Sex | | Race [1] |
| --- | --- | --- | --- | --- |

Address
W359 N5685 Surrey Dr, Oconomowoc, WI 53066

Address Updated On
05-23-2011

Sid Grinker Co., Inc. - Garnishee

| Date of Birth | | Sex | | Race [1] |
| --- | --- | --- | --- | --- |

Address
416 W. Walnut St., Milwaukee, WI 53212

Address Updated On
12-18-2014

---

What is RSS? RSS

## Judgment for eviction

| County | Case Number | Case Caption |
| --- | --- | --- |
| Waukesha | 2011SC001656 | Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al |
| Judgment/Lien Date | Total Amount | Warrant Number |
| 05-09-2011 | $ 0.00 | |
| Date and Time Docketed | Service/Event Date | |

Type Of Tax

Property/Remarks

Judgment Parties

| Party Type | Name | Dismissed | Status | Address | Attorney Name |
| --- | --- | --- | --- | --- | --- |
| Debtor | Foley, William J | No | Active | 515 N. Glenview Avenue #F, Milwaukee, WI 53213 | Mcalister, James L |
| Creditor | Grandview Plaza I LLC | No | Active | N16 W23377 Stone Ridge Drive, Waukesha, WI 53188 | Antonopoulos, Dino |
| Debtor | Rankin, Linda J | No | Active | W359 N5685 Surrey Dr, Oconomowoc, WI 53066 | |
| Debtor | Two Sandwich Kings LLC | No | Active | 1830 Meadow Lane Suite E, Pewaukee, WI 53072 | Mcalister, James L |

## Judgment for money

| County | Case Number | Case Caption |
| --- | --- | --- |
| Waukesha | 2011SC001656 | Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al |
| Judgment/Lien Date | Total Amount | Warrant Number |
| 06-10-2011 | $ 39,705.73 | |
| Date and Time Docketed | Service/Event Date | |
| 06-14-2011 at 12:42 pm | | |

| Satisfaction | Judgment Status | | Date | Type Of Tax |
| --- | --- | --- | --- | --- |
| No | | | | |

Property/Remarks

Judgment was entered 06/10/2011 where Grandview Plaza I LLC was entered as both a creditor and a debtor. On 06/13/2011 the Grandview Plaza I LLC was released as debtor.

As of 06/21/2011 the judgment has been corrected to reflect what the order depicts; Grandview Plaza I LLC as a creditor.

Civil Judgment Events

| Date | Type | Amount |
| --- | --- | --- |
| 06-23-2011 | Transcript issued | $ 0.00 |

EXHIBIT G, p. 2

Judgment Parties

| Party Type | Name | Dismissed | Status | Address | Attorney Name |
| --- | --- | --- | --- | --- | --- |
| Debtor | Foley, William J | No | Active | 515 N. Glenview Avenue #F, Milwaukee, WI 53213 | Mcalister, James L |

| Creditor | Grandview Plaza I LLC | No | Active | N16 W23377 Stone Ridge Drive, Waukesha, WI 53188 | Antonopoulos, Dino |
| Debtor | Two Sandwich Kings LLC | No | Active | 1830 Meadow Lane Suite E, Pewaukee, WI 53072 | Mcalister, James L |

Costs / Amounts
Description        Amount
Judgment amount  $ 39,705.73

---

Judgment for money

| County | Case Number | Case Caption |
| Waukesha | 2011SC001656 | Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al |
| Judgment/Lien Date | Total Amount | Warrant Number |
| 06-10-2011 | $ 31,618.38 | |
| Date and Time Docketed | Service/Event Date | |
| 06-14-2011 at 12:42 pm | | |

| Satisfaction | Judgment Status | Date | Type Of Tax |
| No | | | |

Property/Remarks

Judgment Parties

| Party Type | Name | Dismissed | Status | Address | Attorney Name |
| Creditor | Grandview Plaza I LLC | No | Active | N16 W23377 Stone Ridge Drive, Waukesha, WI 53188 | Antonopoulos, Dino |
| Debtor | Rankin, Linda J | No | Active | W359 N5685 Surrey Dr, Oconomowoc, WI 53066 | |
| Debtor | Rankin, Michael J | No | Active | W359 N5685 Surrey Dr, Oconomowoc, WI 53066 | |

Costs / Amounts
Description        Amount
Judgment amount  $ 31,618.38

1 The designation listed in the Race field is subjective. It is provided to the court by the agency that filed the case.

2 Non-Court activities do not require personal court appearances. For questions regarding which court type activities require court appearances, please contact the Clerk of Circuit Court in the county where the case originated.

Previous    Return to List    Next

Printable Version (PDF)

---

EXHIBIT G, p. 3

search     calendar     pay fees online     reports     help     view cart (0 items)

## Grandview Plaza I LLC vs. Two Sandwich Kings LLC et al

Printable Version (PDF)

## Waukesha County Case Number 2011SC001656

### Court Record Events

What is RSS? [RSS]

| | Date | Event | Court Official | Court Reporter |
|---|---|---|---|---|
| 1 | 03-27-2015 | Letters/correspondence | | |

Additional Text:
dated 03-24-15 from Atty. Smith requesting the removal of the 03-30-15 Contempt Hearing due to reopening of the bankruptcy granted the defendants.

| | | | | |
|---|---|---|---|---|
| 2 | 03-05-2015 | Transcript | Van De Water, Linda | Henry, Kelly L |

Additional Text:
Transcript received and filed for the following date and event: Contempt Hearing - January 5, 2015.

| | | | | |
|---|---|---|---|---|
| 3 | 02-20-2015 | Notice of hearing | | |

Additional Text:
Contempt hearing on March 30, 2015 at 08:30 am.

| | | | | |
|---|---|---|---|---|
| 4 | 01-05-2015 | Notice of hearing | | |

Additional Text:
Contempt hearing on March 16, 2015 at 08:30 am.

| | | | | |
|---|---|---|---|---|
| 5 | 01-05-2015 | Contempt hearing | Van De Water, Linda | Henry, Kelly L |

Additional Text:
Case called for contempt hearing. Attorney Deborah K. Bruck appeared for Grandview Plaza I LLC. Attorney Michael Mack appeared with defendant Michael J Rankin. We are here today to address the plaintiff's motion for contempt. Attorney Bruck presents statements to the Court. Attorney Mack makes statements to the Court. Court grants adjournment for 60 days. Contempt hearing scheduled for March 16, 2015 at 08:30 am. before Judge Haughney.

| | | | | |
|---|---|---|---|---|
| 6 | 12-18-2014 | Earnings garnishment notice | | |

Additional Text:
Filed as to Michel Rankin and Sid Grinker Co., Inc.

| | | | | |
|---|---|---|---|---|
| 7 | 12-12-2014 | Affidavit of substitute service | | |

Additional Text:
Service made of Authenticated Summons and Complaint on Michael and Linda Rankin

| | | | | |
|---|---|---|---|---|
| 8 | 12-03-2014 | Affidavit | | |

Additional Text:
Affidavit and Order to Show Cause for Failure to Appear Before Court Commissioner filed by Atty Bruck

| | | | | |
|---|---|---|---|---|
| 9 | 11-24-2014 | Affidavit of substitute service | | |

Additional Text:
Order to Appear Before Court Commissioner Served on Michael Rankin and Linda Rankin

| | | | | |
|---|---|---|---|---|
| 10 | 07-07-2014 | Records scanned | Ramirez, Ralph M. | |
| 11 | 08-15-2011 | Garnishment hearing | Ramirez, Ralph M. | Weaver, Nancy |

Additional Text:
Case called at 9:36 am for a garnishment hearing. No appearances. Court dismisses any garnishment action to be heard at this time.

| | | | | |
|---|---|---|---|---|
| 12 | 08-09-2011 | Garnishee answer | | |

EXHIBIT G, p. 4

Case 15-02159-svk    Doc 1    Filed 04/01/15    Page 78 of 106

Additional Text:

Harris N.A.; Filed with cover letter dated: August 1, 2011

---

13   08-08-2011        Affidavit of publication

Additional Text:

Garnishment Summons; Filed with cover letter dated: August 5, 2011 from Dino antonopoulos

---

14   07-28-2011        Garnishee answer

Additional Text:

Filed by a rep for Westbury Bank.

---

15   07-21-2011        Garnishee answer

Additional Text:

Filed by a rep for the garnishee Wells Fargo Bank.

---

16   07-20-2011        Garnishee answer

Additional Text:

Filed by a rep for the garnishee The Equable Bank.

---

17   07-15-2011        Garnishee answer

Additional Text:

WaterStone Bank SSB; Filed with cover letter dated: July 14, 2011 from Mark C Vap

---

18   07-15-2011        Garnishee answer

Additional Text:

for Non-Earnings

---

19   07-15-2011        Affidavit of service

Additional Text:

(10) Westbury Bank served on 07-12-11; Guaranty Bank served on 07-12-11; Bank Mutual served on 07-12-11; Tri City National Bank served on 07-12-11; US Bank served on 07-12-11; Wells Fargo served on 07-12-11; Associated Bank served on 07-12-11; Waterstone Bank served on 07-12-11; The Equitable Bank served on 07-12-11; Harris Bank served on 07-12-11; Filed with cover letter dated: July 14, 2011 from Dino Antonopoulos

---

20   07-13-2011        Garnishee answer

Additional Text:

for Non-Earnings - Garnishee Guaranty Bank and Bank Mutual

---

21   07-13-2011        Other papers

Additional Text:

AMENDED Small Claims Garnishment Summons and complaint for Non-Earnings;

---

22   07-11-2011        Other papers

Additional Text:

Small Claims Garnishment Summons and complaint for Non-Earnings; Filed with cover letter dated: July 11, 2011 from Dino Antonopoulos

---

23   06-23-2011        Letters/correspondence

Additional Text:

from The Schroeder Group SC requesting transcript of judgments for Milwaukee & Ozaukee Counties.

---

24   06-23-2011        Transcript of judgment issued                    Madden, Kathleen A
                                Amount
                                $ 0.00

---

25   06-23-2011        Transcript of judgment issued                    Madden, Kathleen A
                                Amount
                                $ 0.00

---

26   06-21-2011        Notes                          EXHIBIT G, p. 5
     Additional Text:

Judgment against Foley and Two Sandwich Kings LLC was corrected to reflect Grandview Plaza I LLC as a creditor ONLY.

---

27   06-14-2011          Judgment docketed
     Additional Text:
     Against real estate as to both judgments.

---

28   06-14-2011          Letters/correspondence
     Additional Text:
     requesting both judgments be docketed, with a Certificate of Service filed.

---

29   06-14-2011          Order for judgment/judgment              Ramirez, Ralph M.
     Additional Text:
     filed and signed by Judge Ralph M. Ramirez

---

30   06-14-2011          Notice of entry of judgment              Ramirez, Ralph M.
     Additional Text:
     Filed and sent as to Two Sandwich Kings LLC and William Foley

---

31   06-14-2011          Notice of entry of judgment              Ramirez, Ralph M.
     Additional Text:
     Filed and sent as to Michael & Linda Rankin

---

32   06-14-2011          Order for financial disclosure           Ramirez, Ralph M.
     Additional Text:
     Sent with judgment as to Two Sandwich Kings LLC & William Foley

---

33   06-14-2011          Order for financial disclosure           Ramirez, Ralph M.
     Additional Text:
     Sent with judgment as to Michael & Linda Rankin

---

34   06-13-2011          Judgment after court trial               Ramirez, Ralph M.

---

35   06-10-2011          Damage hearing                           Ramirez, Ralph M.              Villwock, Gail
     Additional Text:
     Case called at 2:51 pm for a damage hearing. Plaintiff appeared by Meg Douglas and Attorney Antonopoulos. Court addresses fax received
     from Attorney McAlister that they would not be appearing at today's hearing. Attorney Antonopoulos calls witness Meg Douglas, sworn
     and testified. Court questions witness. Exhibit list and 2 exhibits filed. Court grants judgment / damages in the amount listed in exhibit # 2
     - $39,705.73 for Two Sandwich Kings and William Foley, and $31,618.38 judgment against Michael and Linda Rankin. Court will freely grant
     relief from this judgment on behalf of the plaintiff, to reopen the damages.

---

36   06-10-2011          Affidavit
     Additional Text:
     of Dino Antonopoulos filed in Court.

---

37   06-10-2011          Letters/correspondence
     Additional Text:
     FAX dated and received June 10, 2011 from James McAlister, will not be appearing for 06-10-11 hearing

---

38   05-27-2011          Admission of service
     Additional Text:
     Filed with cover letter dated: May 26, 2011 from Dino Antonopoulos

---

39   05-23-2011          Change of address notification
     Event Party
     Rankin, Michael J
     Additional Text:
     ADDRESS INFO for Michael J Rankin Current: W359 N5685 Surrey Dr, Oconomowoc, WI 53066 United States (Effective: 05-23-2011) Prior:
     N8102 River Valley Road, Ixonia, WI 53036 United States

---

40   05-23-2011          Change of address notification          EXHIBIT G, p. 6
     Event Party

Rankin, Linda J

Additional Text:

ADDRESS INFO for Linda J Rankin Current: W359 N5685 Surrey Dr, Oconomowoc, WI 53066 United States (Effective: 05-23-2011) Prior: N8102 River Valley Road, Ixonia, WI 53036 United States

---

41　05-23-2011　　　Affidavit of service

Additional Text:

(3) Service made of Authenticated Summons and Complaint on William Foley, Michael Rankin, and Linda Rankin; filed by cover letter, dated 5/19/2011.

---

42　04-29-2011　　　Notice of hearing returned

Event Party

Rankin, Michael J

Additional Text:

Michael Rankin, damage hearing

---

43　04-29-2011　　　Notice of hearing returned

Event Party

Rankin, Linda J

Additional Text:

Linda Ranking - damage hearing

---

44　04-29-2011　　　Received documents

Additional Text:

resulting from hearing held on: April 22, 2011; with proposed order. (5 day hold); submitted by Atty Dino Antonopoulos

---

45　04-22-2011　　　Notice of hearing

Additional Text:

Damage hearing on June 10, 2011 at 03:00 pm.

---

46　04-22-2011　　　Eviction hearing　　　　　　　　　　　Ramirez, Ralph M.　　　　　　Taylor, Sandy

Additional Text:

Case called at 9:29 am for an eviction hearing. Plaintiff appeared by Meg Douglas and Attorney Antonopoulos. Defendant William Foley appeared in person and by Attorney James McAlister, also for Defendant Two Sandwich Kings. Attorney Antonopoulos calls witness Meg Douglas, sworn and testified. Cross examination by Attorney McAlister. Redirect. Plaintiff rests. Attorney McAlister calls witness William J. Foley, sworn and testified. Cross examination by Attorney Antonopoulos. Attorney McAlister and Attorney Antonoplous stipulated to a statement made. Testimony closed. Attorney Antonopoulos gives closing arguments. Attorney McAlister gives closing statements. Court finds the plaintiff has met their burden. Court grants the judgment of eviction effective today. Court grants writ of assistance. Attorney Antonopoulos moves to have the writ granted immediately. Attorney McAlister makes statements. Court orders writ of eviction to be signed 5-31-11 by 5pm. Attorney Antonopolous addresses the un-service of William Foley. Attorney McAlister advises he cannot accept service for his client, who is in Court. William Foley will not accept service in Court. Court sets damage Hearing.

---

47　04-14-2011　　　Notice of hearing returned

Event Party

Rankin, Linda J

Additional Text:

Linda Rankin, Eviction Hearing 04-22-11

---

48　04-14-2011　　　Notice of hearing returned

Event Party

Rankin, Michael J

Additional Text:

Michael Rankin - Eviction Hearing 04-22-11

---

49　04-11-2011　　　Notice of hearing

Additional Text:

Eviction hearing on April 22, 2011 at 09:30 am.　　EXHIBIT G, p. 7

---

50　04-11-2011　　　Responsible court official changed　　　　　　Ramirez, Ralph M.

| 51 | 04-11-2011 | Contested | | |
|----|------------|-----------|--|--|
| 52 | 04-11-2011 | Appearance | Lau, Laura | Recorded Hearing |
| 53 | 04-11-2011 | Eviction return date | Lau, Laura | Recorded Hearing |

**Additional Text:**

Defendant Two Sandwich Kings LLC in court with attorney James L. McAlister. Plaintiff Grandview Plaza I LLC in court with attorney Dino Antonopoulos. Defendant William J Foley in court with attorney James L. McAlister. Defendant Michael J Rankin not in court. Defendant Linda J Rankin not in court. Atty Antonopoulos requests a writ against Two Sandwich Kings LLC. Atty McAlister files written answer today in court for both clients. Both causes adjourned to circuit court judge.

| 54 | 04-07-2011 | Admission of service | | |
|----|------------|----------------------|--|--|

**Additional Text:**

Filed by Atty. Antonopoulos with cover letter. Jeffrey DeCora admit service of the summons and complaint on behalf of the defendant Two Sandwich Kings, LLC only.

| 55 | 03-25-2011 | Summons and complaint | | |
|----|------------|-----------------------|--|--|

Printable Version (PDF)

Return to Case 2011SC001656

EXHIBIT G, p. 8

September 23, 2011

Dino Antonopoulos
Attorney at Law
The Schroeder Group, S.C.
20800 Swenson Drive, Suite 47
Waukesha, WI 53186

      Re:   Grandview Plaza I, LLC vs. Two Sandwich Kings, LLC, et al
              Waukesha County Case No. 11-SC-1656
              Our Clients: Michael and Linda Rankin
              Chapter 7 Bankruptcy Case No. 09-37264-svk

Dear Mr. Antonopoulos:

Please be advised that this office has been retained by Michael and Linda Rankin relative to the above-referenced matter.

On December 3, 2009, Mr. and Mrs. Rankin filed a Petition for Relief under Chapter 7 of the U.S. Bankruptcy Code, Case No. 09-37264-svk. A Discharge was granted in that case on April 5, 2010. It is our understanding that the judgment entered in the recent small claims case derives from a contract entered into between the parties prior to the bankruptcy filing. While the obligation of the debtors to your client was not scheduled by the debtors in the bankruptcy case, neither was it reaffirmed nor assumed pursuant to the provisions of the bankruptcy code.

As a result of the lack of either an assumption or reaffirmation of the debt between the parties in the bankruptcy, we believe that the judgment entered in this case against Mr. and Mrs. Rankin is void, and that any further actions on your part to collect this debt would be a violation of the debtors' Discharge. I am enclosing a copy of the decision of U.S. Bankruptcy Judge Susan V. Kelley in the case of In re: Brent E. Guseck addressing the issue of failing to schedule a pre-petition obligation and the effectiveness of the Discharge on such a debt, as well as copies of the Notice of Chapter 7 Bankruptcy Case and Discharge of Debtor entered in the Rankin bankruptcy. Judge Kelley's decision indicates that in a no asset case, even though the debt is not scheduled, it is still subject to the Discharge. Judge

Kelley was also the Judge assigned in the bankruptcy case of Mr. and Mrs. Rankin.

Accordingly, kindly cease any further actions against Mr. and Mrs. Rankin at this time. Further, we would request that you vacate the judgment entered against Mr. and Mrs. Rankin in Case No. 11-SC-1656 forthwith.

Thank you for your consideration.

Sincerely yours,

Jeffrey A. Reitz
JAR:rj

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re                        Chapter 7

Brent E. Guseck,              Case No.: 01-30272-svk
            Debtor

## MEMORANDUM DECISION

        The issue here is the reopening of a closed bankruptcy case to add creditors who were omitted from the original schedules. On September 7, 2001, Brent E. Guseck filed a chapter 7 bankruptcy petition instituting this case. Based on his bankruptcy schedules, the clerk of the bankruptcy court determined that this was a "no-asset" case, and issued a notice that creditors should not file claims until further notice. After examining the debtor at the § 341 meeting of creditors, the bankruptcy trustee agreed with the clerk's assessment, and filed a trustee's report indicating that no assets would be available to pay creditors. Accordingly, no claims bar date was ever set in the debtor's case. He received his discharge in bankruptcy on January 3, 2002, and his case was closed shortly thereafter.

        On April 5, 2004, the debtor filed a motion to reopen the bankruptcy case, to add two creditors to his bankruptcy schedules. While his motion didn't say, presumably the reason for the proposed amendment was to obtain a discharge of the debts owed to the unlisted creditors. One of the creditors, John R. Wendt, objected to the motion to reopen. Wendt argued that the debtor did not show "excusable neglect" under Fed. R. Civ. Pro. 60(b) to justify the reopening, and that the debt arose from the debtor's fraud in a fiduciary capacity and was thus not dischargeable under Bankruptcy Code § 523(a)(4).

        The trouble with reopening bankruptcy cases to add omitted creditors to the discharge is that the process is based on a faulty assumption. Given that the debtor is required to file accurate schedules listing all known debts, it would be logical to assume that a debt not listed in the schedules would not be discharged.[1] Debtors such as Mr. Guseck make this assumption all the time, seeking to reopen their bankruptcy cases to add inadvertently omitted creditors in order to receive the discharge. The omitted creditors often resist, raising equitable defenses and questioning the debtors' motivation, further fueling the misunderstanding. And some bankruptcy courts and two courts of appeals have allowed debtors to reopen cases in order to add omitted creditors to the schedules, assuming or implying that the reopening was necessary in order for the omitted debts to be discharged. *See In re Rosinski*, 759 F.2d 539 (6th Cir. 1985); *In re Stark*, 717

---

[1] The Debtor can lose the discharge for filing intentionally false schedules. *In re Mendiola*, 99 B.R. 864, 870 (Bankr. N.D. Ill. 1989).

F.2d 322 (7th Cir. 1983); *LaBate & Conti, Inc. v. Davidson (In re Davidson)*, 36 B.R. 539 (Bankr. D.N.J 1983).

However, the plain language of §§ 727(b) and 523(a)(3) of the Bankruptcy Code provides that reopening the case and amending the schedules to add unlisted creditors does *not* affect whether those debts are discharged. Either the debts were discharged by the original discharge or they are not discharged under § 523(a)(3); amending the schedules is irrelevant to the issue. *See*, *In re Beezley*, 994 F.2d 1433 (9th Cir. 1993); *Karras v. Hansen (In re Karras)*, 165 B.R. 636 (N.D. Ill. 1994); *In re Mendiola*, 99 B.R. 864 (Bankr. N.D. Ill. 1984); *In re Anderson*, 72 B.R. 495 (Bankr. D. Minn. 1987); Lauren A. Helbling and The Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L.J. 33 (Winter 1995).

Section 727(b) of the Bankruptcy Code provides in relevant part:

Except as provided in § 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter* . . . whether or not a proof of claim based on any such debt or liability is filed under § 501 of this title, and whether or not a claim based on any such debt or liability is allowed under § 502 of this title.

11 U.S.C. § 727(b) (2004) (emphasis supplied). According to *Mendiola*, "The operative word is 'all'. There is nothing in § 727 about whether the debt is or is not scheduled." 99 B.R. at 865. Accordingly, unless § 523 provides otherwise, the discharge covers every pre-petition debt, whether or not the debt is scheduled by the debtor, a proof of claim is filed, or the claim is allowed by the bankruptcy court. Stated another way, the Chapter 7 discharge is "good against the world," including unscheduled creditors. Helbling and Klein, *supra*, 69 Am. Bankr. L.J. at 39 ("The discharge is said to be good against the world in the sense that it applies to all unscheduled debts except those that are expressly made nondischargeable by § 523.").

The ultimate issue thus turns on whether the unscheduled debt is nondischargeable under § 523. Section 523(a)(3) deals with unscheduled debts, and states that a discharge under § 727 does not discharge an individual debtor from any debt:

(3) neither listed nor scheduled under § 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit --

(A) if such debt is not of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

2

(B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such subparagraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3). Subparagraph (A) covers debts that were not listed in time for the creditor to file a proof of claim by the claims bar date (unless the creditor had actual notice of the claims bar date in time to file a claim). Subparagraph (B) applies to debts that are not dischargeable under § 523(a)(2), (4) or (6) (e.g., fraud and malicious injury debts), unless the creditor had actual knowledge of the bar date for filing a complaint to determine dischargeability by the applicable deadline. If an unlisted debt does not fit within one of the categories of § 523(a)(3), it is discharged.[2]

If an unscheduled debt is a "garden variety debt," i.e., it does not arise from potentially nondischargeable misconduct, such as fraud or malicious injury, the simple issue is whether a claims bar date was set in the bankruptcy case. If a claims bar date was set, and the unscheduled creditor did not have notice or actual knowledge of the case in time to file a timely proof of claim, the unlisted debt is not discharged under § 523(a)(3). However, if no claims bar date was set, a garden variety debt is discharged. According to Helbling and Klein:

> These rules have operated to make § 523(a)(3)(A) inapplicable in no-asset, no-bar-date cases. The absence of a deadline for the timely filing of a proof of claim makes it impossible to file a proof of claim that is not timely. Since a claim filed after the case is reopened would still be timely, no omitted debt can qualify for nondischargeability under § 523(a)(3)(A).

69 Am. Bankr. L.J. at 43. Accordingly, under the plain language of § 523(a)(3)(A), in a no-asset, no-bar-date bankruptcy case, there is no reason for a debtor to move to reopen the case to amend the schedules to add omitted garden variety debts. These debts already were included in the discharge of § 727, and amending the schedules has absolutely no effect on the dischargeability of the debts.

This case is distinguishable from *In re Bilder*, in which Judge Eisenberg granted a motion to reopen to add garden variety omitted creditors to the schedules, and set bar dates for filing nondischargeability complaints and objecting to exemptions. 108 B.R. 666 (Bankr. E.D. Wis. 1989). *Bilder* was *not* a no-bar-date case. A claims bar date had been set by the clerk of the bankruptcy court, although the case was later determined to be a no-asset case by the trustee. *Id.* Since a claims bar date had been set, and none of the omitted creditors had knowledge of the

---

[2] Of course, under § 727(b), debts that are nondischargeable under other provisions of § 523 (e.g. student loans, child support, taxes) are not discharged whether they are scheduled or not.

3

bankruptcy case in time to file a claim by the bar date, § 523(a)(3)(A) would apply to prevent the discharge of those debts. Whether the bankruptcy court has discretion to reopen a bar-date case to discharge an inadvertently omitted debt that is not dischargeable under the plain language of § 523(a)(3)(A), is not before the court in this case. Helbling and Klein posit that an "equitable defense" now exists to the harsh result that may follow when a claims bar date is set, but no assets are paid out, and a creditor or two were inadvertently omitted from the schedules. 69 Am. Bankr. L.J. at 54-55. The concerns addressed by Judge Eisenberg that creditors are more than claim filers and should be permitted to participate in the case to assist the trustee are well taken, and omitted creditors certainly are entitled to move to reopen a bankruptcy case if they know of unreported or undervalued assets.[3] However, since *Bilder* was a bar-date case, there was no need to reopen the case to allow the creditors to file § 523(c) nondischargeability complaints; the claims of the omitted creditors already were not discharged under § 523(a)(3)(A).

To the extent that Mr. Guseck's unscheduled debts were garden variety debts, they were discharged by his January 3, 2002 discharge without the necessity of reopening the case and amending the schedules. However, Mr. Wendt argues that his claim is not garden variety, but rather was created by Mr. Guseck's fraud in a fiduciary capacity. This argument implicates the second category of nondischargeable unscheduled debts: those under § 523(a)(3)(B), covering debts incurred by fraud, embezzlement, larceny, breach of fiduciary duty or willful or malicious conduct.

As stated above, § 523(a)(3)(B) provides that an unscheduled debt will not be discharged if the debt is specified in § 523(a)(2), (4) or (6), and the creditor did not have notice or actual knowledge of the bankruptcy in time to file a complaint to determine the dischargeability of the debt. This makes sense, as debts described in these subsections will be discharged unless the creditor files a complaint to determine dischargeability within 60 days of the § 341 meeting of creditors held during the bankruptcy case. 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007. Absent the provisions of Bankruptcy Code § 523(a)(3)(B), debtors could obtain a discharge from otherwise nondischargeable debts simply by excluding the injured creditors from the schedules. As noted by Helbling and Klein, "Without the type of special accommodation for omitted debts found at § 523(a)(3)(B), a crafty debtor who has defrauded a creditor could work a second fraud by omitting the debt from the schedules until after the deadline for contesting dischargeability." 69 Am. Bankr. L.J. at 44.

One result of § 523(a)(3)(B) is to remove the deadline for filing nondischargeability complaints under Bankruptcy Code § 523(a)(2), (4) or (6). Another effect is to remove the exclusive jurisdiction of the bankruptcy court over the nondischargeability action. While bankruptcy courts have exclusive jurisdiction over § 523(a)(2), (4) and (6) actions, jurisdiction over all other § 523 actions is concurrent with the state courts. 11 U.S.C. § 523(c)(1); 28 U.S.C. § 1334(b) (2004).

---

[3] Bankruptcy Code § 350(b) provides: "A case may be reopened in the Court in which such case was closed to administer assets, to accord relief to the Debtor, or for other cause."

4

In sum, the price to the debtor of omitting a debt incurred through fraud, embezzlement, larceny, breach of fiduciary duty, or willful and malicious conduct is loss of exclusive federal jurisdiction and loss of the sixty-day limitation period. Thereafter, the action may be brought, like most other dischargeability actions, at any time and either in a bankruptcy court or in a nonbankruptcy court.

Helbling and Klein, 69 Am. Bankr. L.J. at 44. As with garden variety debts, the discharge of § 523(a)(2), (4) and (6) debts is not affected by whether the case is reopened and the debts are added to the bankruptcy schedules. The deadline for filing nondischargeability complaints already will have run by the time the case is reopened, and the Bankruptcy Rules do not provide for an extension of the deadline after it has passed. *See* Fed. R. Bankr. P. 9006(b)(3) and 4007(d).

However, it *would* be appropriate for the debtor or creditor to move to reopen a bankruptcy case to file a declaratory judgment action to determine whether the omitted debt is dischargeable under the provisions of § 523(a) (2), (4) or (6). *See, Karras, supra*, 165 B.R. at 639 (pointing out that Bankruptcy Rule 4007(b) permits either the debtor or the creditor to reopen the bankruptcy case to litigate dischargeability). The debtor may prefer the bankruptcy court's expertise in determining § 523 disputes; the creditor may see an advantage in trying the case elsewhere.

In sum, this court will not reopen Mr. Guseck's bankruptcy case to allow him to amend his bankruptcy schedules and thereby discharge the omitted creditors. The amendment of the schedules simply will not accomplish the end sought. Since this was a no-asset, no-bar-date case, all garden variety debts already have been discharged. Any unscheduled debts of the kind described in Bankruptcy Code § 523(a)(2), (4) or (6) have not been discharged, but a declaratory judgment action as to their dischargeability may be brought in this court or the state court.

A separate order will be entered granting the motion to reopen, but requiring the debtor to file a declaratory judgment action as to the dischargeability of Mr. Wendt's debt within 30 days of the date of the order, or the case will again be closed. If Mr. Wendt already has sought a determination of the nondischargeability of his debt in a state court, that would be grounds for this court to abstain from the debtor's declaratory judgment action.

Dated: May 28, 2004

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge

Plaintiff File No.: 216786

| STATE OF WISCONSIN | CIRCUIT COURT | WAUKESHA COUNTY |
|---|---|---|

GRANDVIEW PLAZA I, LLC
1830 MEADOW LANE, SUITE A
PEWAUKEE WI 53072
                        Plaintiff,

v.

MICHAEL RANKIN
W359N5685 SURREY DR
OCONOMOWOC WI 53066
                        Defendant.

( ) Personal    () Substitute
( ) Posted      () Corporate

Process Server: _____
Time: _____ Date: _____
Address of serve: _____
_____
Person Served: _____

Case No.: 11SC001656
**ORDER TO APPEAR BEFORE
A COURT COMMISSIONER
AND AFFIDAVIT**

UPON the annexed affidavit of Bruck Law Offices, S.C., by Nicholas A. Smith, counsel for plaintiff, I DO HEREBY ORDER AND REQUIRE YOU, MICHAEL RANKIN, to appear before me, the Honorable Joseph L. Cook, court commissioner in and for WAUKESHA County, Wisconsin, at my office located at 1220 S. Grand Avenue, Waukesha, Wisconsin 531874, on Tuesday, November 25, 2014 at 1:45 o'clock in the p.m., and answer on and under oath concerning your personal and real property and to have with you and produce at such hearing any and all books, papers and documents in your possession or under your control pertaining to your property, real and personal, and to your financial affairs, including but not limited to income tax returns, and including the records on the attached list, and to abide and perform such orders as may be made by me in the premises and pending this proceeding. Until further order to the contrary, you, the said MICHAEL RANKIN, are hereby enjoined and restrained from making any transfer or other disposition of your property not exempt by law from execution, and from any interference therewith.

**PLEASE NOTE THE LIST OF DOCUMENTS ATTACHED TO THIS ORDER. YOU ARE REQUIRED TO BRING A COPY OF ALL DOCUMENTS LISTED TO THE HEARING AND FAILURE TO DO SO MAY RESULT IN YOUR BEING HELD IN CONTEMPT OF COURT.**

PLAINTIFF MAY AT THE TIME SET FORTH ABOVE REQUEST THE APPOINTMENT OF A RECEIVER. FAILURE TO COMPLY WITH THIS ORDER AND TO APPEAR AT THE HEARING MAY RESULT IN YOUR BEING HELD IN CONTEMPT OF COURT.

Dated this 10th day of November, 2014.

_____
Joseph L. Cook, Court Commissioner
in and for WAUKESHA County, Wisconsin

EXHIBIT I, p. 1

STATE OF WISCONSIN      )
                              ) ss.
COUNTY OF MILWAUKEE  )

Nicholas A. Smith being first duly sworn on oath, deposes and says as follows:

1.     That he is an attorney for the plaintiff in the above-entitled action.

2.     That judgment was duly rendered and entered in this action in the amount of $31,618.38 plus costs on June 10, 2011.

3.     That there is at present due and unpaid upon said judgment the amount of $37,818.59 plus costs subsequent to judgment and interest from and after the date of entry of judgment, as well as the costs of this proceeding.

4.     That this affidavit is made in support of an order requiring the above-named MICHAEL RANKIN to appear before the Honorable Joseph L. Cook residing in WAUKESHA County, Wisconsin, at a time and place to be named in said order and further requiring MICHAEL RANKIN to answer on and under oath concerning his/her property and to have with him/her and to produce at such hearing any and all books, papers and documents in his/her possession or under his/her control pertaining to his/her property, real and personal, and to his/her financial affairs, including but not limited to income tax returns, and including the records on the attached list, and to abide and perform such orders as may be made in the premises.

PLAINTIFF MAY AT THE TIME SET FORTH REQUEST THE APPOINTMENT OF A RECEIVER.

Dated at Milwaukee this day of November 6, 2014.

_____
Nicholas A. Smith
Bruck Law Offices, S.C.

Subscribed and sworn to before me this
November 6, 2014.

_____
Notary Public, State of Wisconsin
My Commission: September 20, 2015

EXHIBIT I, p. 2

## ATTACHMENT TO ODER TO APPEAR BEFORE COURT COMMISSIONER

List of Documents and Information to be
Produced at the Scheduled Hearing

1. Copies of defendant's and defendant's spouse's last three (3) Federal and State Income Tax Returns as well as copies of the schedules and forms used to create said returns.

2. Copies of all defendant's and/or defendant's spouse's pay stubs for the most recent three (3) months and/or the most recent three (3) months that the defendant and/or defendant's spouse worked and received payment.

3. Three (3) most recent statements regarding all checking, savings, financial and deposit accounts of any nature in which the defendant and/or defendant's spouse has any interest. Statements should include name of institution, account number, amount in the account and complete title of the account, including owner or owners.

4. A list of all people or entities that owe any money to the defendant and/or the defendant's spouse, including name, address and amount.

5. Any and all documents relating to any real estate owned by the defendant and/or the defendant's spouse or real estate that the defendant and/or the defendant's spouse holds an interest in. Also, all documents relating to any known encumbrance against such real estate or interest (i.e. mortgage, lien, judgment, etc.).

6. Any and all documents relating to tenants of real estate owned by the defendant and/or defendant's spouse or real estate that the defendant and/or the defendant's spouse holds an interest in, including information regarding rent owed to the defendant and/or the defendant's spouse or that will be owed to the defendant and/or the defendant's spouse in the future.

7. A list of any and all of defendant's and/or defendant's spouse's personal property with a value of over $300.00, as each item, including but not limited to automobiles, furniture, tools, jewelry, firearms, boats, snowmobiles, collections, etc.

8. Any and all documents pertaining to any loans the defendant and/or defendant's spouse has.

9. Any and all documents relating to any stocks, bonds, IRA's, 401(k), or other financial investments of defendant and/or defendant's spouse, including list name, number of shares and value.

10. Three (3) most recent statements regarding all credit or charge accounts that the defendant and/or defendant's spouse has, including the granting institution and limit, payment amount and balance information.

11. Three (3) most recent utility statements, including electric, gas, cable television and any other monthly payments made by defendant and/or defendant's spouse.

12. Any and all documents relating to any medical debts the defendant and/or defendant's spouse has, including provider name and amount due on the debt.

13.     Any and all bills relating to all insurance payments made by defendant and/or defendant's spouse, including but not limited to auto, home, health, life, etc.

14.     Proof of child support payments being made or received by the defendant and/or defendant's spouse.

15.     Any and all documents relating to any pension income, social security, disability, or any other income received by the defendant and/or defendant's spouse.

16.     Any and all documents showing defendant and/or defendant's spouse has received need-based assistance, including but not limited to, medical assistance, food stamps, supplemental security income, and benefits for veterans, from within the last six (6) months.

17.     Any and all documents showing defendant and/or defendant's spouse has been determined to be eligible to receive need-based public assistance, regardless of whether the defendant and/or defendant's spouse has begun to receive the benefits.

18.     Any and all documents relating to any lawsuits in which the defendant and/or the defendant's spouse is either a party plaintiff or a party defendant.

19.     Any and all documents identifying any contracts under which the defendant and/or defendant's spouse is now receiving or has a future right to receive any payment, by listing the parties to the contract and the payment terms as to amounts, dates and conditions.

20.     A list of the defendant's and/or the defendant's spouse's business assets with notation as to the existence and identity of any encumbrances or liens there-against.

EXHIBIT I, p. 4

Plaintiff File No.: 16786

| **STATE OF WISCONSIN** | **CIRCUIT COURT** | **WAUKESHA COUNTY** |
|---|---|---|

GRANDVIEW PLAZA I, LLC
1830 MEADOW LANE, SUITE A
PEWAUKEE WI 53072

Process Server: _____
Time: _____ Date: _____
Address of serve: _____

**Plaintiff,**

v.

Person Served: _____
Case No.: 11SC001656

MICHAEL RANKIN
W359N5685 SURREY DR
OCONOMOWOC WI 53066

LINDA RANKIN
W359N5685 SURREY DR
OCONOMOWOC WI 53066

( ) Personal     ( ) Substitute
( ) Posted       ( ) Corporate

**Defendants.**

## AFFIDAVIT AND ORDER TO SHOW CAUSE FOR FAILURE TO APPEAR BEFORE COURT COMMISSIONER

| STATE OF WISCONSIN | ) |
|---|---|
| | ) ss. |
| COUNTY OF WAUKESHA | ) |

DEC 3 2014

THIS IS AN AUTHENTICATED COPY OF AN
ORIGINAL DOCUMENT FILED IN THE CLERK
Deborah Krusche Bruck being first duly sworn on oath, deposes and says as follows: COUNTY

1. That your affiant is one of the attorneys for the plaintiff in the above captioned matter.

2. That a judgment was duly entered in the aforementioned court on June 10, 2011, in favor of plaintiff and against defendants above named in the sum of $31,618.38.

3. That said defendants were ordered by order of the Honorable Joseph L. Cook, a court Commissioner in and for WAUKESHA County Wisconsin, was ordered to appear before him at his office at 1220 S. Grand Avenue, Waukesha, WAUKESHA County, Wisconsin, on the 25th day of November, 2014 at 1:45 o'clock in the p.m. of said day to answer under oath and provide specific documents concerning said judgment debtor's property in accordance with § 816.03 of the Wisconsin Statutes.

4. That said defendants refused to answer under oath, failed to provide the documents as ordered, or failed to appear at the time and place specified in said Order and affiant waited for a period of thirty (30) minutes but said defendants failed to appear either in person or by attorney or any other person, whereupon said Court Commissioner noted said default.

5. Affiant makes this affidavit for the purpose of procuring an Order requiring defendants to show cause, if any said defendants have, why said defendants should not be declared in and punished for contempt for willfully disobeying the order to appear and be examined in said action.

Deborah Krusche Bruck
Bruck Law Offices, S.C.

Subscribed and sworn to before me this
November 25, 2014.

Notary Public, State of Wisconsin
My Commission expires:

Pursuant to the Fair Debt Collection Practices Act (15 U.S.C. Section 1692), we are required to state that we are attempting to collect a debt on our client's behalf and any information will be used for that purpose.

EXHIBIT J, p. 1

Upon reading and filing the foregoing affidavit and upon all the records, files and proceedings herein and heretofore had in the above entitled action;

IT IS HEREBY ORDERED THAT:

1. The judgment debtors personally appear as stated below to answer as to why the judgment debtors should not be held in contempt of court for failure to comply with the Order of the Honorable Joseph L. Cook, Court Commissioner in and for WAUKESHA County, Wisconsin, for Supplementary Proceedings pursuant to Chapter 816 of the Wisconsin Statutes.

| | |
|---|---|
| Date: | 1-5-15 |
| Time: | 10:00 am |
| Presiding Judge: | Linda Van de Water |
| Location: | **WAUKESHA County Courthouse** |
| | **515 W. Moreland Blvd** |
| | **Waukesha, WI 53188-2402** |
| | **Room No.** _____ |

2. That a copy of this order and affidavit be served upon the said defendants at least 24 hours before the time set for hearing herein.

3. That the judgment debtor may avoid appearing at this hearing only by, prior to the hearing date, either paying the judgment in full together with all costs taxable by statute in the supplementary proceedings or by scheduling and appearing at a time mutually agreed to by all parties herein before the Court Commissioner, Joseph L. Cook, for supplementary proceedings herein and complying in all respects with the order underlying said supplementary proceedings to produce documents.

Dated at WAUKESHA, WI this 25th day of November, 2014.

Joseph L. Cook, Court Commissioner in and for
WAUKESHA County

**If you need help in this matter because of a disability please call: (262) 548-7557**

**Calendar Clerk for Circuit Judge assigned to case,**
**Telephone: (262) 548-7557**

Plaintiff File No.: 216786

**STATE OF WISCONSIN          CIRCUIT COURT          WAUKESHA COUNTY**

GRANDVIEW PLAZA I, LLC
1830 MEADOW LANE, SUITE A
PEWAUKEE WI 53072
                Plaintiff,

**ORDER FOR COSTS IN
SUPPLEMENTARY PROCEEDINGS**

v.

MICHAEL RANKIN
W359N5685 SURREY DR
OCONOMOWOC WI 53066
                Defendant.

Case No.: 11SC001656

---

Supplementary proceedings having have been held on the 25th day of November, 2014, at 1:45 p.m. before the Honorable Joseph L. Cook, Court Commissioner in and for WAUKESHA County, Wisconsin, at his office at 1220 S. Grand Avenue, Waukesha, WI 53187, the plaintiff appearing by attorney, Deborah Krusche Bruck, and the defendant failing to appear,

NOW THEREFORE, upon all the records, files and proceedings had herein, and upon the motion of the plaintiff's attorney,

IT IS ORDERED that the plaintiff have the following costs in these Supplementary Proceedings as allowed under the provisions of Section 816.11 Stats., with said costs to be added and docketed to the foot of the plaintiff's judgment herein:

| | | |
|---|---|---|
| 1. | Court Commissioner's Fees | $15.00 |
| 2. | Statutory Fees | $25.00 |
| 3. | Process Fees | $60.00 |
| | **TOTAL:** | $100.00 |

Dated this 25th day of November, 2011.

BY THE COURT:

Hon. Joseph L. Cook
Court Commissioner in and for
WAUKESHA County, Wisconsin

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **WAUKESHA COUNTY**

GRANDVIEW PLAZA I, LLC
1830 MEADOW LANE, SUITE A
PEWAUKEE WI 53072                                **ORDER FOR COSTS IN**
                        Plaintiff,                **SUPPLEMENTARY PROCEEDINGS**

v.

LINDA RANKIN
W359N5685 SURREY DR                        Case No.: 11SC001656
OCONOMOWOC WI 53066
                        Defendant.

---

     Supplementary proceedings having have been held on the 25th day of November, 2014, at 1:45 p.m. before the Honorable Joseph L. Cook, Court Commissioner in and for WAUKESHA County, Wisconsin, at his office at 1220 S. Grand Avenue, Waukesha, WI 53187, the plaintiff appearing by attorney, Deborah Krusche Bruck, and the defendant failing to appear,

     NOW THEREFORE, upon all the records, files and proceedings had herein, and upon the motion of the plaintiff's attorney,

     IT IS ORDERED that the plaintiff have the following costs in these Supplementary Proceedings as allowed under the provisions of Section 816.11 Stats., with said costs to be added and docketed to the foot of the plaintiff's judgment herein:

| | | |
|---|---|---|
| 1. | Court Commissioner's Fees | $15.00 |
| 2. | Statutory Fees | $25.00 |
| 3. | Process Fees | $40.00 |
| | **TOTAL:** | $80.00 |

     Dated this 25th day of November, 2011.

BY THE COURT:

_____
Hon) Joseph L. Cook
Court Commissioner in and for
WAUKESHA County, Wisconsin

EXHIBIT J, p. 4

1   STATE OF WISCONSIN     CIRCUIT COURT     WAUKESHA COUNTY
                            BRANCH 10

2   -------------------------------------------------------------

3   IN RE THE MATTER OF:

4   GRANDVIEW PLAZA I, LLC,

5                  Plaintiff,

6   -vs-                      **CASE NO.  11-SC-1656**

7   TWO SANDWICH KINGS, LLC, et al.,

8                  Defendant.

9   -------------------------------------------------------------

10           **CONTEMPT HEARING - JANUARY 5, 2015**

11   -------------------------------------------------------------

12   PROCEEDINGS HELD BEFORE THE
     HONORABLE LINDA M. VAN DE WATER,
13   CIRCUIT JUDGE, BRANCH 10, PRESIDING

14

15               A-P-P-E-A-R-A-N-C-E-S

16         DEBORAH K. BRUCK, Attorney at Law, appeared on

17   behalf of the Plaintiff.

18         MICHAEL MACK, Attorney at Law, appeared on behalf

19   of the Defendant.

20

21

22

23

24

25              Kelly L. Henry, RPR
            Official Reporter - Branch 10

**TRANSCRIPT OF PROCEEDINGS**

THE COURT: The Court will call Case Number

11-SC-1656. Appearances, please.

MS. BRUCK: Attorney Deborah Krusche Bruck

appearing on behalf of plaintiff, Grandview Plaza I,

LLC.

MR. MACK: Good morning, Your Honor.

Attorney Michael Mack appearing on behalf of Michael

Rankin, R-A-N-K-I-N, as well as his spouse. Mr. Rankin

also appears in person.

THE COURT: All right. Counsel?

MS. BRUCK: The defendant, Michael Rankin,

appeared at an Order to Appear. Linda Rankin did not.

During that appearance, Michael Rankin provided very

little information but stated that he filed bankruptcy

and that he did not include this and that his attorney

was going to reopen and add this to the bankruptcy. At

this point, to my knowledge, that has not happened.

THE COURT: Counsel?

MR. MACK: Yes. Judge, this court doesn't

even have jurisdiction to hear this matter. There is,

as Ms. Bruck should know, there is no need in a no

asset case where there was no claims barred date set,

because it is a no asset case where a debtor like Mr.

Rankin and his spouse inadvertently omitted a creditor,

| | |
|---|---|
| 1 | there is no need to reopen the case.  I have the clear |
| 2 | case law here for this court if it wants to examine a |
| 3 | case, a memorandum decision by Judge Kelley, who, by |
| 4 | the way, proceeded over this bankruptcy case.  There is |
| 5 | no need to reopen this case.  It looks like it's going |
| 6 | to be necessary in this particular case to do that.  I |
| 7 | have had cases over the years like this where a debtor |
| 8 | inadvertently omitted a creditor, and those cases |
| 9 | typically are resolved very quickly by simply informing |
| 10 | creditor's counsel of what occurred. |
| 11 | Apparently in this case we are going to |
| 12 | have to jump through hoops and go through a waste of |
| 13 | time and energy because Miss Bruck refuses to allow |
| 14 | this case simply to go away because it should go away. |
| 15 | I might add, Judge, that in 2011, specifically August |
| 16 | of 2011, this same, I believe it was Miss Bruck's law |
| 17 | firm, was going to have a garnishment hearing in front |
| 18 | of Judge Ramirez.  I notified Ms. Bruck's law firm of |
| 19 | bankruptcy, and no appearances occurred in front of |
| 20 | Judge Ramirez on August 15th of 2011, I thought we had |
| 21 | heard the end of it, and that's what I thought would |
| 22 | occur is that this would simply go away, as it should, |
| 23 | but now it has reared its ugly head three years later. |
| 24 | MS. BRUCK:  If I might? |
| 25 | THE COURT:  Go ahead. |

```
 1              MS. BRUCK:  Generally I would absolutely

 2     agree with counsel.  This is a different case, and this

 3     is a case where my client would have absolutely

 4     intervened in the bankruptcy.  These are unusual

 5     circumstances, and that's what they would intend to do

 6     if this is reopened in the bankruptcy.

 7              THE COURT:  So what would you like to do,

 8     counsel?

 9              MS. BRUCK:  Well, I would certainly be

10     willing to adjourn this until that's done.

11              THE COURT:  Do you agree?

12              MR. MACK:  I would also like the

13     garnishment, Judge, to be quashed.  There is a

14     garnishment that's occurring.  I believe that's illegal

15     as well.  Until we can have a resolution in bankruptcy

16     court, I don't believe the garnishment should continue.

17              THE COURT:  Is there a date set for that or

18     --?

19              MS. BRUCK:  I don't believe there is.  I

20     don't know if there is a date set for that or not, --

21              MR. MACK:  I think it's already happened.

22              MS. BRUCK:  -- but there is a continuing

23     garnishment.

24              MR. MACK:  According to my client and Ms.

25     Bruck, it's already occurring.
```

EXHIBIT K, p. 4

1           MS. BRUCK:  I would not agree to that, if

2 the Court would like to make a ruling on it.

3           THE COURT:  How much time do you need to

4 adjourn this to?

5           MR. MACK:  Well, I am going to reopen in

6 the next day or two, Judge.  I have got to submit a

7 filing fee and talk with -- My client was in Arizona

8 attending to his sick in-laws so he just returned and

9 he and I haven't had an opportunity to discuss this

10 matter in detail, but this week I intend to reopen the

11 case so I imagine it should be resolved in bankruptcy.

12 I have only had one other case like this.  Typically

13 within 30 to 60 -- 60 days it should be resolved one

14 way or another.  Miss Bruck has indicated that she is

15 going to be making some kind of objection, good luck

16 with that, but if that's the case, this might drag out

17 for a while.

18           THE COURT:  So do you want a status about

19 60 days out?

20           MR. MACK:  Sure, Judge.  That would be

21 fine.

22           THE COURT:  All right.

23           (Discussion off the record to review

24 dates.)

25           THE COURT:  Is there a Monday in March

| | |
|---|---|
| 1 | that's better? Does the 9th or 16th work? |
| 2 | MS. BRUCK: No matter for us. |
| 3 | MR. MACK: I have a bench trial, and I |
| 4 | apologize, Your Honor, I didn't bring my calendar with |
| 5 | me, but I believe let's just set that -- I believe that |
| 6 | that would be fine. I do have a bench trial sometime |
| 7 | in early March, but I don't -- |
| 8 | THE COURT: Do you want the 16th then |
| 9 | maybe? |
| 10 | MR. MACK: That would be great, please. |
| 11 | THE CLERK: March 16th at, and he does them |
| 12 | first thing. |
| 13 | THE COURT: 8:30. |
| 14 | THE CLERK: We can put it on for 8:30. I |
| 15 | am not sure if it's either 8:30 or 8:15. |
| 16 | MS. BRUCK: It's 8:30, generally. |
| 17 | THE COURT: I don't think anyone does 8:15. |
| 18 | THE CLERK: All right. |
| 19 | MR. MACK: I say 8:30. |
| 20 | THE COURT: 8:30. So will they get a |
| 21 | notice in the mail or are you going to give it to them? |
| 22 | THE CLERK: No, I am going to give it to |
| 23 | them. |
| 24 | THE CLERK: 3-16 at 8:30. |
| 25 | THE COURT: 8:30. (Proceedings end.) |

```
 1   STATE OF WISCONSIN)
                                 ss.
 2   WAUKESHA COUNTY    )

 3

 4               I, KELLY L. HENRY, Official Reporter for

 5   Branch 10, Waukesha County, do hereby certify that I have

 6   carefully transcribed and compared the foregoing pages with

 7   my stenographic notes and electronic recording from said

 8   proceeding and that the same is a true and correct

 9   transcript of same.

10               Dated this 5th day of March, 2014, in

11   Waukesha, Wisconsin.

12

13

14                              _____

15                              KELLY L. HENRY, RPR
                                Official Reporter-Branch 10
16                              Waukesha County

17

18

19

20

21

22

23

24

25        EXHIBIT K, p. 7
```

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Wisconsin

## Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines

A Chapter 7 bankruptcy case concerning the debtor(s) listed below was filed on 12/3/09.

**This notice contains important information for the debtor(s) and creditors.** All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE:  No employee of the United States Bankruptcy Court may give legal advice. You may want to consult an attorney to protect your rights.

## See Reverse Side For Additional Information.

Name(s) used by the debtor(s) in the last 8 years (including married, maiden, trade) and address:

| | |
|---|---|
| Michael J Rankin<br>W359 N5685 Surrey Dr<br>Oconomowoc, WI 53066 | Linda J Rankin<br>W359 N5685 Surrey Dr<br>Oconomowoc, WI 53066 |
| Case Number:<br>09−37264−svk | Social Security/Taxpayer ID/Employer ID/Other Nos.:<br>xxx−xx−3581<br>xxx−xx−4147 |
| Attorney for Debtor(s) (name and address):<br>Paula R. Brunner<br>1033 N. Mayfair Rd. Ste. 300<br>Milwaukee, WI 53226<br>Telephone number:  414−771−9200 | Bankruptcy Trustee (name and address):<br>Bruce A. Lanser<br>N14 W24200 Tower Place<br>Suite 201<br>Waukesha, WI 53188<br>Telephone number:  262−522−2280 |

## Meeting of Creditors
### The debtor(s) <u>must</u> attend this meeting.

Date:  **January 29, 2010**          Time:  **10:00 AM**

Location:  **Brookfield Safety Building, Municipal Court, 2100 North Calhoun Road, Brookfield, WI 53005**

## Presumption of Abuse under 11 U.S.C. § 707(b)
*See "Presumption of Abuse" on reverse side.*

The presumption of abuse does not arise.

## Deadlines:
Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

**Deadline to File a Complaint Objecting to Discharge of the Debtor *or* to Determine Dischargeability of Certain Debts: 3/30/10**

**Deadline to Object to Exemptions:**
Thirty (30) days after the *conclusion* of the meeting of creditors.

## Creditors May Not Take Certain Actions:

In most instances, the filing of a bankruptcy case automatically stays certain collections and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days, or not exist at all; although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

## Please Do Not File a Proof of Claim Unless You Receive a Notice To Do So.

## Creditors with a Foreign Address

A creditor to whom this notice is sent at a foreign address should read the information under "Do Not File a Proof of Claim at This Time" on the reverse side.

| | |
|---|---|
| **Address of the Bankruptcy Clerk's Office:**<br>Room 126, U.S. Courthouse<br>517 East Wisconsin Avenue<br>Milwaukee WI 53202−4581<br>Telephone number: (414) 297−3291<br>VCIS number: (414) 297−3582 or Toll Free (877) 781−7277<br>Court Web Site: http://www.wieb.uscourts.gov | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>WAYNE BLACKWELDER |
| **Clerk's Office Hours:** 8:30 a.m. − 4:30 p.m. (Central Time) | Date:  12/4/09 |

EXHIBIT L, p. 1

# ADDITIONAL INFORMATION

FORM B9A (12/07)

| | |
|---|---|
| Filing of Chapter 7 Bankruptcy Case | A bankruptcy case under Chapter 7 of the Bankruptcy Code (Title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. |
| Legal Advice | No employee of the United States Bankruptcy Court may give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail, or otherwise to demand repayment; taking actions to collect money or to obtain property from the debtor; repossessing the debtor's property; or starting or continuing lawsuits or foreclosures; or garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days, or not exist at all; although the debtor can request the court to extend or impose the stay. |
| Presumption of Abuse | If the presumption of abuse arises, creditors may have the right to file a motion to dismiss the case under § 707 (b) of the Bankruptcy Code. The debtor may rebut the presumption by showing special circumstances. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time, and location listed on the front side. *The debtor (both spouses in a joint case) must be present at the meeting, with photo identification and proof of social security number, to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend but are not required to do so. The meeting may be continued and concluded at a later date without further notice. |
| Do Not File a Proof of Claim at This Time | There does not appear to be any property available to the trustee to pay creditors. *You therefore should not file a proof of claim at this time.* If it later appears that assets are available to pay creditors, you will be sent another notice informing you that you may file a proof of claim, and informing you of the deadline for filing your proof of claim. If this notice is mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | The debtor is seeking a discharge of most debts, which may include your debt. A discharge means that you may never try to collect the debt from the debtor. If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code § 727 (a) *or* that a debt owed to you is not dischargeable under Bankruptcy Code § 523 (a) (2), (4), or (6), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint Objecting to Discharge of the Debtor or to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that deadline. |
| Exempt Property | The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors. The debtor must file a list of all property claimed as exempt. You may inspect that list at the bankruptcy clerk's office. If you believe that an exemption claimed by the debtor is not authorized by law, you may file an objection to that exemption. The bankruptcy clerk's office must receive any objection by the "Deadline to Object to Exemptions" listed on the front side. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the lists of the debtor's property, debts, and property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

## — Refer to Other Side for Important Deadlines and Notices —

EXHIBIT L, p. 2

Case 09-37264-svk   Doc 4   Filed 12/03/09   Page 2 of 2

Case 15-02159-svk   Doc 1   Filed 04/01/15   Page 106 of 106